IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WONDERLAND SWITZERLAND AG,

    Plaintiff,

v.

EVENFLO COMPANY, INC. and
GOODBABY US HOLDINGS, INC.,

    Defendants.

Civil Action No. 18-1990-RGA

## MEMORANDUM OPINION

Steven J. Balick and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Gary C. Ma, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP, Palo Alto, CA; E. Robert Yoches (argued), FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP, Washington, DC; and Stephen E. Kabakoff (argued), Benjamin Schlesinger (argued), Kara A. Specht, and R. Maxwell Mauldin, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP, Atlanta, GA, Attorneys for Plaintiff.

Jack B. Blumenfeld and Jeremy A. Tigan (argued), MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; and John M. Mueller (argued), BAKER & HOSTETLER LLP, Cincinnati, OH, Attorneys for Defendants.

January 23, 2020

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before the Court is the issue of claim construction of various terms in U.S. Patent Nos. 7,862,117 ("the '117 patent"), 8,087,725 ("the '725 patent"), and 8,123,294 ("the '294 Patent"). I have considered the Parties' Joint Claim Construction Brief. (D.I. 58). I heard oral argument on January 22, 2020.

## I. BACKGROUND

The patents in this case relate to headrest adjustment, harness adjustment, and a harness storage system for child car seats.

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history— the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 328 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

While claim terms are generally given their plain and ordinary meaning, there are two exceptions: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Disavowal "requires that the specification or prosecution history make clear that the invention does not include a particular feature or is clearly limited to a particular form of the invention." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal citations omitted). An explicit re-definition is not necessary. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001). While courts must read claims in view of the specification, they may not simply import limitations from the specification into the claims. *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003). The Federal Circuit has acknowledged "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998).

### III. CONSTRUCTION OF AGREED-UPON TERMS

I adopt the following agreed-upon constructions:

| Claim Term | Construction |
|---|---|
| "surface" ('117 Patent, Claim 1; '725 Patent, Claims 1, 8 and 21) | "outside layer" |
| "pivotally" / "pivoted" ('117 Patent, Claim 1; '725 Patent, Claims 6 and 13) | "allowing a rotational movement about a point or axis" |
| "mounted" ('117 Patent, Claims 1, 4, 9; '725 Patent, Claims 1, 6, 7, 8, 13, 14, 21 and 22) | "attached" |
| "includes" ('725 Patent, Claim 2) | "contains" |
| "guide bar/guide bar member" ('117 Patent, Claim 9) | No construction necessary |
| "against" ('294 Patent, Claims 2, 6 and 14) | "in contact with" |

3

## IV. CONSTRUCTION OF DISPUTED TERMS

For the first eleven terms below, I adopt the constructions either agreed to by the parties during oral argument or for the reasons discussed at oral argument. I then explain my resolution of the two terms I was not able to resolve at oral argument.

1. "notches" ('117 Patent, Claims 1 and 4; '725 Patent, Claims 6, 8 and 13)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning: "openings or indentations in a surface"

    b. *Defendants' proposed construction*: Plain and ordinary meaning: "shapes cut from the end or edge of a workpiece"

    c. *Court's construction*: No construction necessary. Defendants' additional proposed limitations are rejected.[1]

2. "mechanism" ('117 Patent, Claim 1, 4, '725 Patent, Claims 1, 2, 6, 8, 9, 13, 21-22)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning: "one or more parts that perform a function"

    b. *Defendants' proposed construction*: Plain and ordinary meaning: "a system of parts that interact"

    c. *Court's construction*: "one or more parts that perform a function"

3. "bar" ('117 Patent, Claims 1, 4, 9 and 10; '725 Patent, Claims 1, 6, 7, 8, 13, 14, 21, and 22)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning: "a rod"

    b. *Defendants' proposed construction*: Plain and ordinary meaning: "a relatively long straight rigid piece of solid material"

    c. *Court's construction*: No construction necessary.

Plaintiff argues that nothing in the intrinsic evidence requires limitations of length or structure for any claimed "bar," and importing limitations from the specification into the claims

---

[1] In light of the Court's construction of "notches", I will decline to construe the term "said notches" ('725 Patent, Claim 6).

is inappropriate. (D.I. 58 at 17). Defendants argue that their construction comports with the specification of the '117 patent, which explains that the fixed guide bar "provides an opportunity to use a metal rod" which, in the event of a crash, can be evaluated to determine the stresses incurred during the crash based upon the amount of bending of the "fixed guide rod." (*Id.* at 18, citing '117 patent at 6:44-51). Defendants contend that the fixed guide bar is therefore straight, rigid, and made of a solid material capable of imparting the properties described in the specification. (*Id.* at 18).

Since I find that a "bar" used for post-crash evaluation could be hollow, curved, or partially flexible, I reject Defendants additional descriptive language and find no construction necessary.

4. "direct" / "directed" / "redirects" ('117 Patent, Claims 1 and 9; '725 Patent, Claims 2, 7, 9, and 14)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning: "to guide"

    b. *Defendants' proposed construction*: Plain and ordinary meaning: "to cause movement of"

    c. *Court's construction*: "to control the position of" / "controlled the position of"

5. "engagement" ('117 Patent, Claims 1, 4, 9 and 10; '725 Patent, Claims 1, 6, 8, 13, 21 and 22)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning: "contact"

    b. *Defendants' proposed construction*: Plain and ordinary meaning: "interlocked or meshed"

    c. *Court's construction*: "contact between elements sufficient to cause one element to affect the position or operation of the other element"

6. "connected" ('117 Patent, Claim 4; '725 Patent, Claims 1, 6, 8, and 13)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning: "in permanent or temporary contact with"

5

    b.      *Defendants' proposed construction*: Plain and ordinary meaning: "joined or fastened to"

    c.      *Court's construction*: "in a state of contact between elements sufficient to cause one element to affect the position or operation of the other element"

7. "engagement portions" ('725 Patent, Claims 1 and 21)

    a.      *Plaintiff's proposed construction*: Plain and ordinary meaning: "part(s) of structure(s) that contact other structure(s)"; not subject to 35 U.S.C. § 112 ¶6

    b.      *Defendants' proposed construction*: Indefinite under 35 U.S.C. § 112, subject to 35 U.S.C. § 112 ¶6: "notches (and structural equivalents)"

    c.      *Court's construction*: "the parts of structures that interlock or mesh with other structures"

8. "smooth" ('294 Patent, Claims 1, 6 and 12)

    a.      *Plaintiff's proposed construction*: Plain and ordinary meaning: "a surface relatively free from irregularities, roughness, or projections"

    b.      *Defendants' proposed construction*: Plain and ordinary meaning: "having a surface free from irregularities, roughness, or projections"

    c.      *Court's construction*: No construction necessary.

9. "cover forming a smooth support" ('294 Patent, Claims 1, 6 and 12)

    a.      *Plaintiff's proposed construction*: Plain and ordinary meaning: "a cover forming a support surface relatively free from irregularities, roughness, or projections"

    b.      *Defendants' proposed construction*: Plain and ordinary meaning: "forming a support surface free from irregularities, roughness or projections with the rigid shell surface"

    c.      *Court's construction*: No construction necessary.

10. "slots" ('294 Patent, Claims 1, 10, 12, 13, and 18)

    a.      *Plaintiff's proposed construction*: Plain and ordinary meaning: "openings for straps"

    b.      *Defendants' proposed construction*: Indefinite under 35 U.S.C. § 112. Alternatively: plain and ordinary meaning: "a narrow opening, groove or slit formed in the rigid seat shell"

c.  *Court's construction*: No construction necessary.

11. "guide member(s)" ('117 Patent, Claim 1; '725 Patent, Claims 2 and 9)

   a.  *Plaintiff's proposed construction*: Plain and ordinary meaning: "a component that directs the movement of the harness belt"

   b.  *Defendants' proposed construction*: Plain and ordinary meaning: "member must engage a vertically oriented portion of the harness belt"

   c.  *Court's construction*: No construction necessary.

12. "above" / "below" ('117 Patent, Claims 1 and 9; '725 Patent, Claims 1, 7, 8, 14 and 21)

   a.  *Plaintiff's proposed construction*: Plain and ordinary meaning: "vertically over/under"

   b.  *Defendants' proposed construction*: Plain and ordinary meaning: "completely vertically over/under"

   c.  *Court's construction*: No construction necessary. Defendants' proposed limitation of "completely" is rejected.

The parties agree "above" and "below" refer to vertical positions (over/under). (D.I. 58 at 25). The terms "above" and "below" describe the relationship between various components in the claims, including "a head rest extending above said seat member," "a fixed guide bar mounted in said seat back above said control rack," "harness belts… passing through at least one opening in said seat back below said head rest," and "a pair of harness belts… passing through said seat back below said head rest." ('117 patent at 8:1-2, 9:15-16; '725 patent at 7:60-67, 8:33-39, 8:54-59, 9:23-31, 10:48-55).

Plaintiff argues that the claims do not require that the headrest be "completely" above the seat member and that the specification shows the headrest only partially above the seat member. (D.I. 58 at 26). Defendants contend that construing the terms "above" and "below" as per its

7

proposed construction was the only way to patentably distinguish over prior art, narrowing the scope of the subject claims by excluding any other interpretation. (*Id.* at 28).

I find the prosecution history too ambiguous to offer a clear disclaimer of the plain and ordinary meaning of the terms. "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [the Court] ha[s] declined to find prosecution disclaimer." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (internal citation omitted). There is no evidence that the applicant argued that "above" or "below" meant "completely above" or "completely below" as necessary to distinguish the prior art. *See, e.g.*, D.I. 58, Ex. 5 at JA0088; Ex. 15 at JA0208. "[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013) (internal citation omitted). I will thus decline to construe the terms, other than to note that Defendants cannot argue that "above" or "below" means "completely above" or "completely below."

13. "along" ('294 Patent, Claims 2 and 6)

    a.    *Plaintiff's proposed construction*: Plain and ordinary meaning: "next to"

    b.    *Defendants' proposed construction*: Plain and ordinary meaning: "over the length of"

    c.    *Court's construction*: "next to"

Claims 2 and 6 of the '294 patent recite, "said belt straps projecting out of said harness storage cavity along said rigid shell." ('294 patent at 6:52-53, 7:25-27). Plaintiff argues that the claims do not require Defendants' limitation that the belts project from the storage cavity and span "the length of" the rigid shell. (D.I. 58 at 69). Plaintiff asserts that the "rigid shell" includes both a seat portion of the car seat and a back rest portion, and the intrinsic evidence does not

8

suggest that the shoulder straps span the length of the seat portion and the back rest portion. (*Id.* at 70, citing '294 patent, 6:16-40, 7:1-27, 4:5-10).

The patent aims to permit the conversion of a car seat into a booster seat without requiring the harness to be removed from the car seat shell. Once the harness storage cavity is closed around the harness, the belt straps project out from the cavity such that they are then able to be covered by padding to enable comfortable transportation of a child. Reading the claims in the context of the whole patent, as I am required to do, I am thus persuaded that the most accurate understanding of "along" would mean the shoulder and belt straps extend "next to" the shell. *See Renishaw PLC*, 158 F.3d at 1250. I will thus construe the term "along" to mean "next to."

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.

Further, the parties are requested to agree to a mutual reduction in the number of asserted claims and the amount of asserted prior art and to submit a joint status report on this request within twenty-eight days.