IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WONDERLAND SWITZERLAND AG, | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1990-RGA |
| | ) | |
| EVENFLO COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMBINED OPENING BRIEF IN SUPPORT OF
WONDERLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND WONDERLAND'S PARTIAL DAUBERT MOTION**

*Of Counsel:*

Gary C. Ma
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600

E. Robert Yoches
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Benjamin R. Schlesinger
Kara A. Specht
R. Maxwell Mauldin
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
271 17th Street, NW, Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400

Dated:  September 22, 2020

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.     INTRODUCTION FOR SUMMARY JUDGMENT ......................................................... 1

II.    ARGUMENT ........................................................................................................... 2

    A.     Legal Standards for Summary Judgment and Burden of Proof ............................. 2

    B.     As a Matter of Law, the Claims of the '294 Patent Are Not Invalid for
        Indefiniteness or Lack of Written Description......................................................... 3

        1.     The Court should estop Evenflo from resurrecting invalidity
            arguments under 35 U.S.C. § 112 it conceded at the claim
            construction hearing............................................................................ 4

        2.     Mr. Campbell's written description position is deficient as a matter
            of law because the specification provides ample support for "slots" ......... 6

        3.     Mr. Campbell's indefiniteness position is deficient as a matter of
            law................................................................................................. 6

    C.     As a Matter of Law, None of the References Evenflo Cites Anticipate the
        Asserted Claims ............................................................................................... 7

        1.     A reference that lacks a claim limitation does not anticipate that
            claim............................................................................................... 8

        2.     Evenflo's anticipation analysis is based on an incorrect statement
            of the law because proofs for invalidity and infringement are
            different............................................................................................ 8

        3.     As a matter of law, Dingman and the SafeGuard car seat do not
            anticipate the asserted claims of the '117 and '725 patents because
            they do not have a movable guide bar/lock bar ....................................... 10

        4.     As a matter of law, none of the references Evenflo asserts against
            the claims of the '294 patent anticipates those claims........................... 15

III.   INTRODUCTION FOR DAUBERT MOTION................................................................ 27

IV.    LEGAL STANDARDS FOR DAUBERT MOTION ....................................................... 28

    A.     The Court Should Only Permit Opinion Testimony from a Qualified
        Expert Using Proper Techniques and Reliable Evidence ..................................... 28

    B.     Reliance on Undocumented or Unreliable Testimony from Another Expert
        Renders an Expert's Opinion Unqualified and Unreliable ................................... 29

V.     ARGUMENT ........................................................................................................... 29

A.    The Court Should Strike from Evenflo's Damages Expert Report all
Instances Where She Relied on Unreliable Evidence from Evenflo's
Technical Expert .............................................................................. 29

1.    To rely on another expert's opinions on the acceptability, cost, and
non-infringing nature of an alternative, Evenflo's expert
needed to show those opinions were reliable............................................ 29

2.    Evenflo's damage expert should not be able to rely on any
opinions from Evenflo's technical expert about non-infringing
alternatives because there is no analysis .................................................... 30

3.    Mr. Campbell's opinions are also deficient because he never
explained how the alternatives were acceptable. ...................................... 32

4.    Evenflo's damages expert cannot rely on any opinions from its
technical expert about marketing or licensing because the technical
expert is not qualified to provide opinions about marketing or
licensing and has provided no basis for these opinions ............................ 33

VI.    CONCLUSION.............................................................................................. 35

**TABLE OF EXHIBITS**

| No. | Exhibit |
|---|---|
| 1 | U.S. Patent No. 7,862,117 |
| 2 | U.S. Patent No. 8,087,725 |
| 3 | U.S. Patent No. 8,123,294 |
| 4 | Rebuttal Expert of David Campbell Regarding Non-Infringement ("Campbell Rebuttal Report") |
| 5 | Expert Report of David Campbell Regarding Invalidity and Exhibits A, B, C1, C2, C3, and C4 ("Campbell Opening Report") |
| 6 | Excerpt of Transcript of Claim Construction Hearing (January 22, 2020) |
| 7 | Excerpt of File History of U.S. Patent No. 8,123,294 |
| 8 | Reply Expert Report of David Campbell Regarding Invalidity ("Campbell Reply Report) |
| 9 | Excerpt of Transcript of Deposition of David Campbell (Aug. 6, 2020) |
| 10 | U.S. Patent No. 7,246,854 ("Dingman") |
| 11 | U.S. Patent No. 6,695,412 ("Barger") |
| 12 | JP No. 3 127 638 ("Nakagawa") |
| 13 | Rebuttal Expert Report of Melissa A. Bennis ("Bennis Report") |
| 14 | Excerpt of Transcript of Deposition of Melissa A. Bennis (August 12, 2020) |
| 15 | Rebuttal Expert Report of Peter J. Myers on Validity |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003)................................................................. 18

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) ............................................... 6

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
  783 F.3d 1374 (Fed. Cir. 2015)................................................................. 6

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
  350 F.3d 316 (3d Cir. 2003)...................................................................... 28

*Callaway Golf Co. v. Acushnet Co.*,
  576 F.3d 1331 (Fed. Cir. 2009)............................................................. 8, 14

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  No. 09-290, 2012 WL 6562221 (W.D. Pa. Dec. 15, 2012) ................... 29

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................. 2

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
  725 F.3d 1341 (Fed. Cir. 2013)............................................................. 8, 14

*Commil USA, LLC v. Cisco Sys.*,
  575 U.S. 632, 135 S. Ct. 1920 (2015)...................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).............................................................................. 28, 32

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
  285 F.3d 609 (7th Cir. 2002) ................................................................... 29

*EMI Grp. N. Am., Inc. v. Cypress Semiconductor Corp.*,
  268 F.3d 1342 (Fed. Cir. 2001)................................................................ 21

*Finisar Corp. v. DirecTV Grp., Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008)................................................................ 20

*Gentex Corp. v. Donnelly Corp.*,
  69 F.3d 527 (Fed. Cir. 1995).................................................................... 16

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999)...............................................................32, 33

*Heller v. Shaw Indus., Inc.*,
  167 F.3d 146 (3d Cir. 1999)..............................................................................28

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990)........................................................................10

*Hoechst Celanese Corp. v. BP Chems, Ltd.*,
  78 F.3d 1575 (Fed. Cir. 1996)..........................................................................18

*In re Gabapentin Patent Litig.*,
  No. 2-00-cv-02931, 2011 WL 12516763 (D.N.J. Apr. 8, 2011)........................35

*In re NTP, Inc.*,
  654 F.3d 1279 (Fed. Cir 2011)..........................................................................14

*In re Oelrich*,
  666 F.2d 578 (C.C.P.A. 1981) ..........................................................................21

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994)..........................................................................28, 29

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001)........................................................................18

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  No. 2:06-CV-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011)........................33

*Lockwood v. Am. Airlines, Inc.*,
  107 F.3d 1565 (Fed. Cir. 1997)..........................................................................6

*Mars, Inc. v. Coin Acceptors, Inc.*,
  527 F.3d 1359 (Fed. Cir. 2008)........................................................................32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................2

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996)..........................................................................18

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011) ..............................................................................................2

*Moba, B.V. v. Diamond Automation, Inc.*,
  325 F.3d 1306 (Fed. Cir. 2003)..........................................................................5

*MOSAID Techs. Inc. v. LSI Corp.*,
    No. 10-192-RGA, 2014 WL 807877 (D. Del. Feb. 28, 2014) ................................................ 29

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ................................................................................................ 11

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314, (Fed. Cir. 2003) .............................................................................................. 11

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................ 17

*PowerOasis, Inc. v. T–Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008) .................................................................................................. 6

*Profectus Tech. LLC v. Huawei*,
    823 F.3d 1375 (Fed. Cir. 2016) .......................................................................................... 18, 19

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005) .................................................................................................. 8

*StairMaster Sports/Med. Prods., Inc. v. Groupe Procycle, Inc.*,
    25 F. Supp. 2d 270 (D. Del. 1998) ............................................................................................ 5

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002) ............................................................................................ 9, 10

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) ............................................................................................. 6, 7

*TQP Dev. v. Merrill Lynch & Co.*,
    No. 2:08-CV-471-WCB, 2012 WL 3283354 (E.D. Tex. Aug. 10, 2012) .............................. 32

*Unique Concepts, Inc. v. Brown*,
    939 F.2d 1558 (Fed. Cir. 1991) ............................................................................................... 18

*United States v. Downing*,
    753 F.2d 1224 (3d Cir 1985) .................................................................................................... 28

*Vitronics Corp. v. Conceptronic*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................................................. 18

*W.L. Gore & Assocs. v. C.R. Bard, Inc.*,
    No. 11-515-LPS-CJB, 2015 WL 12731924 (D. Del. Oct. 23, 2015) ........................ 29, 31, 35

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) ............................................................................................... 10

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ........................................................................... 29, 30

**Statutes**

35 U.S.C. § 102 ................................................................................................. 1

35 U.S.C. § 103 ................................................................................................. 7

35 U.S.C. § 112 ......................................................................................... passim

35 U.S.C. § 282 ................................................................................................. 2

**Rules**

Fed. R. Civ. P. 26 ............................................................................................. 3

Fed. R. Civ. P. 56 ............................................................................................. 2

Fed. R. Evid. 702 ............................................................................... 28, 29, 35

Fed. R. Evid. 703 ........................................................................................... 28

**Other Authorities**

K. Dietly, *Lightening the Load: Whether the Burden of Proof for Overcoming a Patent's Presumption of Validity Should Be Lowered*, 78 Fordham L. Rev. 2615 (2010) ................... 2

## I.    INTRODUCTION FOR SUMMARY JUDGMENT

Evenflo raised several invalidity arguments against United States Patent Nos. 7,862,117 (Ex. 1), 8,087,725 (Ex. 2), and 8,123,294 (Ex. 3). None has merit, and Wonderland moves for partial summary judgment for several because no reasonable jury could find in favor of Evenflo on those issues.

In his Rebuttal Report Regarding Non-Infringement (Ex. 4), Evenflo's technical expert, David Campbell, introduced a written-description invalidity attack on the '294 patent based on the claim term "slots formed in the harness storage cavity." *Id.* at ¶ 153. The undisputed facts, however, establish the '294 patent specification provides sufficient written description for the term. In addition, the term is not indefinite as a matter of law because the Court interpreted "slots" in the claim-construction order and Evenflo withdrew its indefiniteness argument during the hearing. Furthermore, Mr. Campbell had no trouble understanding the meaning of "slots" in his Expert Report Regarding Invalidity (Ex. 5 at 124-251), which he filed a month before his Rebuttal Report Regarding Non-Infringement.

Evenflo also alleged the asserted claims were anticipated under 35 U.S.C. § 102, but Mr. Campbell admitted the prior art does not teach all the limitations of the asserted claims, so the art does not anticipate those claims under § 102.

Because a reasonable jury could not find for Evenflo by clear and convincing evidence on these issues, Wonderland respectfully requests the Court grant it partial summary judgment.[1]

---

[1] Evenflo has another deficient invalidity defense for the '294 patent, but Wonderland is not moving for summary judgment on it.

## II.      ARGUMENT

### A.      Legal Standards for Summary Judgment and Burden of Proof

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the moving party proves the absence of a genuinely disputed material fact, the burden shifts to the non-movant to demonstrate the existence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). One attacking validity must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

> A patent's presumption of validity can be analogized to a tennis match. As Charles Phipps [*The Presumption of Administrative Correctness: The Proper Basis for the Clear and Convincing Evidence Standard*, 10 FED. CIR. B.J. 143, 148 (2001)] explains, § 282 of the Patent Act "determines who will serve first, but does not regulate the height of the net." The height of the net, and thereby the difficulty for the party challenging the patent "to hit the ball over the net and place the ball in the patentee's court," is regulated by the weight of the evidentiary burden. The clear and convincing standard "set[s] [the net] in the high position," making it more difficult for the challenger to pass the ball.

K. Dietly, *Lightening the Load: Whether the Burden of Proof for Overcoming a Patent's Presumption of Validity Should Be Lowered*, 78 FORDHAM L. REV. 2615, 2628–29 (2010).

**B.    As a Matter of Law, the Claims of the '294 Patent Are Not Invalid for Indefiniteness or Lack of Written Description**

Mr. Campbell did not raise any invalidity defense for lack of written description or indefiniteness (35 U.S.C. §§ 112 (a) and (b)) in his opening Expert Report Regarding Validity (Ex. 5), which was the proper place to raise Evenflo's invalidity defenses. FED. R. CIV. P. 26 (a)(2)(B); D.I. 19 at 5. Instead, he tried to slip into his Rebuttal Report Regarding *Non-infringement* an allegation that claims 1, 2, 4, and 12–16 of the '294 patent lack written description based on the term "slots formed in the cavity."[2] Ex. 4 at ¶ 153.

Mr. Campbell opined, "A cavity is an absence of material; here, the cavity is formed in the rigid seat back . . . [and] the 'slots' cannot be formed in the cavity because the cavity itself contains no material for which to create slots." *Id.* He concludes, "Requiring that slots be formed 'in the cavity' is incurably vague to a person of ordinary skill because there is no way to determine whether the inventor intended the claims to cover slots formed in the rigid seat back or slots formed in the cover." *Id.*

Evenflo raised this argument during the claim-construction hearing but withdrew it after the Court seemed unconvinced, so it cannot raise it again now. In addition, in his Rebuttal Report on Infringement, Mr. Campbell applied the wrong standard for the written-description requirement[3] and never tried to meet the correct standard. Finally, Mr. Campbell's opinion that "slots formed in the cavity" is "incurably vague" fails because the Court understood the term, and Mr. Campbell did as well when applying the term to the prior art. For these reasons,

---

[2] Claim 1 does not recite "slots formed in the cavity," but rather recites "said harness cavity further being formed with slots." Ex. 3 at claim 1. Mr. Campbell did not indicate whether he believed this term also lacks written description or is indefinite.

[3] Mr. Campbell conflates lack of written description (what he purports to argue) in 35 U.S.C. § 112 (a) with indefiniteness (what he actually argues) under 35 U.S.C. § 112 (b), but both defenses are insufficient as a matter of law.

Wonderland asks the Court to grant partial summary judgment of no invalidity of the claims of the '294 patent under 35 U.S.C. §§ 112 (a) and (b).

> **1.      The Court should estop Evenflo from resurrecting invalidity arguments under 35 U.S.C. § 112 it conceded at the claim construction hearing**

In its claim-construction brief and at the claim-construction hearing on January 22, 2020, Evenflo presented essentially the same 35 U.S.C. § 112 (b) invalidity argument as Mr. Campbell just raised in his Infringement Rebuttal Report. In the briefs, Evenflo stated:

> [T]he recitations of "said [harness] *cavity* further being formed with *slots*" ('294 Patent, claims 1, 10, and 12) and "*slots* formed in said harness storage *cavity*" (*id.*, claims 13 and 18) are indefinite because a person of ordinary skill would be incapable of understanding how a bounded open space (a slot) could be *formed in* another hollow space (a cavity).

D.I. 58 at 66 (emphasis in original). During the claim-construction hearing, counsel for Evenflo alleged the term "slots" is indefinite (Ex. 6 at 82:24–83:3), but after the Court appeared skeptical, that counsel eventually agreed the plain and ordinary meaning of "slots" was appropriate:

> The Court:      Well, don't you think, Mr. Tigan, that any reasonable person referring to this or reading this would understand that if you have, your words, a void that it's going to be bounded by something and that's what is being talked about?
>
> Mr. Tigan:      I think that some may view it as reading the specification and looking at that as additional carve-outs in the relationship, Your Honor, I won't contest that . . .
>
> The Court:      Well, you know, my preference is actually not to construe the term, because I don't think it needs construction, the function, though, for the straps that appears in the claims, you know. Slot's a pretty ordinary English word. I don't think it's used in any non-ordinary way here.
>
>      So, I don't think a jury will have any trouble figuring this one out, at least understanding what is meant by slots. . . .
>
> Mr. Tigan: . . . As long as it's the plain, ordinary meaning of slot and not the broad undefined opening, I think we're fine with that.

*Id.* at 83:5-85:2.

Despite this concession, Evenflo, now through Mr. Campbell, seeks to resurrect it as a written-description challenge. But the test for written description is whether the patent specification describes the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of that invention. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003). Mr. Campbell's Rebuttal Report did not aver any deficiency in the specification, but instead opined the claims provided "no way to determine whether the inventor intended the claims to cover slots formed in the rigid seat back or slots formed in the cover." Ex. 4 at ¶ 153. This is essentially the same indefiniteness argument Evenflo conceded at the claim construction hearing. Evenflo's concession should preclude it from raising it again now.

In *StairMaster Sports/Med. Prods., Inc. v. Groupe Procycle, Inc.*, 25 F. Supp. 2d 270 (D. Del. 1998), the plaintiff conceded an issue during claim construction but tried to reverse itself during summary judgment proceedings. The Court did not permit it.

> StairMaster's arguments are too late. StairMaster is judicially estopped from changing its position. The doctrine of judicial estoppel, also called the doctrine against the assertion of inconsistent positions, is a judge-made doctrine that, "seeks to prevent a litigant from asserting a position inconsistent with one that [he] has previously asserted in the same or in a previous proceeding."
>
> The claim construction phase of this litigation has ended with StairMaster conceding and accepting Procycle's definition of this claim angle, including how it is measured. It now wants to adopt a diametrically opposed position on the same claim language. StairMaster will not be permitted to play fast and loose with the Court. Given its concession during the Markman hearing, StairMaster's assertion of a new position must be regarded as being made in bad faith.

*Id.* at 279–80. The Court should estop Evenflo from avoiding its concession and now asserting the term is indefinite.

### 2.    Mr. Campbell's written description position is deficient as a matter of law because the specification provides ample support for "slots"

Mr. Campbell never applies the proper standard for the written-description requirement. 35 U.S.C. § 112 (b). Compliance with the written-description requirement involves an objective inquiry as to whether the original specification "show[s] that the inventor actually invented the invention claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*). Mr. Campbell never opines the inventors did not invent what they claimed.

That position has no factual support because the specification and original claims are replete with examples of the formation of the slots in the cavity. Ex. 3 at 3:46–51, 4:58–62, 5:20–37, Figs. 5, 5A; Ex. 7 at 12 (original claim 11). The undisputed evidence shows the claims of the '294 patent exceed the written-description standard. *See Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (explaining an applicant shows possession of the claimed invention by describing the claimed invention with all of its limitations using such descriptive means as words, structures, figures, diagrams, and formulas that set forth the claimed invention).

Although "[c]ompliance with the written description requirement is a question of fact," summary judgment is proper if "no reasonable fact finder could return a verdict for the non-moving party" on the issue. *PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). That is the case here.

### 3.    Mr. Campbell's indefiniteness position is deficient as a matter of law

Whether a claim is indefinite is a legal issue. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342–43 (Fed. Cir. 2015) (citations omitted). To satisfy the requirements of 35 U.S.C. § 112 (b), a claim need only be "amenable to construction" with "reasonable certainty." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1379 (Fed. Cir. 2015).

Should the Court consider the issue of indefiniteness, it fails as a matter of law because the Court has already found the term amenable to construction with reasonable certainty in its claim-construction order. D.I. 72, 6–7. Evenflo agreed. Ex. 6 at 82:24–83:3. Even Mr. Campbell had no difficulty with the term "slots formed in the cavity" when identifying that element in the prior art references. Ex. 5 at ¶ 49; Ex. 8 at ¶¶ 87, 100, 113.

"The internal coherence and context assessment of the patent, and whether it conveys claim meaning with reasonable certainty, are questions of law." *Teva Pharms.*, 789 F.3d at 1342. Mr. Campbell's only issue with the claims was that a person of ordinary skill would not know whether "the inventor intended the claims to cover slots formed in the rigid seat back or slots formed in the cover." Ex. 4, ¶ 153. But the test is not what the inventor intended. It is what the claims mean, and the claims explain the slots "permit said shoulder straps and said belt straps to project from said harness storage cavity when said cover is closed and said harness buckle and said latch members are positioned within said harness storage cavity." Ex. 3 at 6:36–40; *see also id.* at claims 1, 12, and 13. The cavity includes the cover, so the question Mr. Campbell raises is irrelevant. *Id.* at 6:31–32; *see also id.* at claims 1, 12, and 13. As a matter of law, these claims are not indefinite under 35 U.S.C. § 112 (b).

C.    **As a Matter of Law, None of the References Evenflo Cites Anticipate the Asserted Claims[4]**

The undisputed facts show Evenflo's asserted references do not anticipate any of the asserted patents. Evenflo's arguments for all three asserted patents fail because they rely on an incorrect legal standard, conflating invalidity with non-infringement. For the '117 and '725 patents, Evenflo raises only anticipation defenses based on two similar prior-art references, the

---

[4] Evenflo also alleges the asserted claims of the '294 patent are obvious under 35 U.S.C. § 103, but those defenses are not part of this motion.

SafeGuard car seat and Dingman, the patent that covers the SafeGuard car seat, but Evenflo admits that neither reference discloses a movable guide bar or a lock bar. For the '294 patent, the SafeGuard car seat, Triumph car seat, and Barger patent lack a harness storage cavity, and there is no evidence of anyone performing the steps in the method claims in the prior art. The remaining reference, Nakagawa, lacks a harness storage cavity in a rigid shell and slots that allow the shoulder straps to project out of the cavity.

   **1.**  **A reference that lacks a claim limitation does not anticipate that claim**

   "Anticipation [35 U.S.C. § 102] requires clear and convincing proof that a single prior art reference not only discloses all of the elements of the claim within the four corners of the document, but also discloses those elements arranged as in the claim." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013) (internal quotations omitted). A patent claim is anticipated only if "within the four corners of a single, prior art document . . . every element of the claimed invention [is described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (alterations in original) (internal citations omitted). Anticipation is a question of fact, but "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

   **2.**  **Evenflo's anticipation analysis is based on an incorrect statement of the law because proofs for invalidity and infringement are different**

   Mr. Campbell admitted the prior art did not anticipate the claims of the patents-in-suit. He explained at his deposition:

> Q.  Is it your opinion, though, overall, that, properly construed, the claims aren't infringed and also are not anticipated?

A.  Yes.

Ex. 9 at 37:9–13 (objection to form omitted).

In his opening Expert Report Regarding Invalidity, Mr. Campbell admitted the SafeGuard car seat and Dingman do not disclose all elements of the asserted claims of the '117 and '725 patents, which they would need to do to anticipate the claims, but he just wanted his noninfringement position:

> [I]n the course of my comparison of the claims of the '117 Patent with the Dingman '854 patent and the IMMI SafeGuard car seat, there are several instances where I do not personally believe the structure disclosed in the Dingman '854 patent and the IMMI SafeGuard seat literally teach the identical corresponding structures in the '117 Patent claims. However, in each instance, the identified corresponding structures of the prior art references teach those limitations in at least the same way as the corresponding structures of the EveryStage car seat is alleged to meet those limitations (as set forth in Wonderland's Infringement Contentions).

Ex. 5 at ¶ 27; *see also id.* at ¶ 35 (same for the '725 patent). This admission alone warrants summary judgment.

Mr. Campbell's position runs counter to the principle of patent law that "infringement and invalidity are separate matters under patent law." *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 135 S. Ct. 1920, 1928 (2015).

> This court made unequivocally clear in [*Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995)] that there is no "practicing the prior art" defense to literal infringement. . . .
>
> The discussion in *Baxter* cited above makes clear that literal infringement is determined by construing the claims and comparing them to the accused device, not by comparing the accused device to the prior art.

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365–66 (Fed. Cir. 2002).

The Federal Circuit rejected this position in *Zenith Electronics Corp. v. PDI Communication Systems, Inc.* as well, rejecting defendant's argument that "to the extent the

[allegedly infringing product] is considered to practice [certain claim limitations], then so did the [prior art]." 522 F.3d 1348, 1363 (Fed. Cir. 2008).

> [A]ccused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a "practicing prior art" defense to literal infringement under the less stringent preponderance of the evidence standard. . . . Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference. It is the presence of the prior art and its relationship to the claim language that matters for invalidity.

*Id.* (internal citations omitted).

### 3. As a matter of law, Dingman and the SafeGuard car seat do not anticipate the asserted claims of the '117 and '725 patents because they do not have a movable guide bar/lock bar[5]

The failure of Evenflo's anticipation arguments should come as no surprise because during prosecution of the '117 patent, the United States Patent and Trademark Office (PTO) allowed the claims over Dingman (Ex. 1, cover page), which Evenflo and Mr. Campbell concede covers the SafeGuard car seat.[6] A patent challenger's burden is more difficult to satisfy when relying on prior art the PTO considered. *See, e.g.*, *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990) (meeting the clear and convincing evidence standard is especially difficult when relying on prior art the PTO considered).

Mr. Campbell admitted the only references Evenflo cited against the '117 and '725 patents (the Dingman patent and the SafeGuard car seat) have no "movable guide bar" or "lock bar," which the asserted claims of the '117 and '725 patents all require. Ex. 9 at 70:18–72:6. When a party's expert concedes the absence of a dispositive element on which it bears the burden of proof, the Court should enter judgment for the opposing party because there is no

---

[5] Dingman and the SafeGuard car seat also lack other claim elements, but this motion only addresses this element.

[6] Evenflo and Mr. Campbell assert the SafeGuard car seat is the commercial embodiment of Dingman, and Mr. Campbell frequently treats them as interchangeable. *E.g.*, Ex. 5 at 14, n.1.

genuine dispute of material fact. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1324–25 (Fed. Cir. 2008).

> **a)    Each of the asserted claims requires a movable guide bar ('117 patent) or a lock bar ('725 patent)**

The asserted claims of the '117 patent each recite a "movable guide bar"(independent claim 9 and dependent claim 10) and the asserted claims of the '725 patent each recite a "lock bar" (independent claims 1 and 21 and dependent claims 2, 7, and 22). These two bars refer to the same structure because the '725 patent is a continuation of the '117 patent (Ex. 2 at 1) and has the same disclosure as that patent. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333–34 (Fed. Cir. 2003).

In claim 9 of the '117 patent, the movable guide bar is (1) part of the head rest, (2) "vertically movable along said openings in response to a corresponding vertical movement of said head rest relative to said seat back," and (3) "operable to direct said harness belt through the openings in said seat back." Ex. 1 at claim 1. It also "redirects the positioning of the corresponding said harness belts." *Id.* In claims 1 and 21 of the '725 patent, the lock bar (1) is part of "a locking mechanism [movably] mounted on said head rest," (2) "to engage said control rack to secure said head rest into one of the plurality of selected vertical positions," (3) "can be moved into engagement with a selected one of said engagement portions to fix said head rest in the corresponding selected vertical position," and (4) is connected to the harness belts "so that said harness belts will move vertically in response to a corresponding vertical movement of said head rest." Ex. 2 at claims 1 and 21. The claims recite that this very busy element is a "bar," which the Court gave its plain and ordinary meaning. D.I. 72 at 4.

Annotated Figures 20 and 21 from the '117 patent, below, show the movable guide bar/lock bar (42, green), which moves up and down with the headrest (35, blue). Ex. 1 at 6:14–

17. Movable guide bar/lock bar 42 engages control rack 38 (yellow) to hold the headrest at a desired position. *Id.* at 7:3–8. It also directs the harness belt through openings.

**lower head rest position**
**(fig. 21)**

**higher head rest position**
**(fig. 20)**



*Id.* at Figs. 20–21 (annotated).

> **b)** **Evenflo's expert admits Dingman and the SafeGuard car seat have no movable guide bar or lock bar**

In his Expert Report on Invalidity, Mr. Campbell identified the center track 191 in Dingman and corresponding structure in the SafeGuard car seat as the movable guide bar/lock bar in asserted claims of the '117 and '725 patent. *See*, *e.g.*, Ex. 5 at 43–46, 69–73. The portion of Dingman Mr. Campbell cited as teaching the movable guide bar/lock bar explains that "the panel adjustment mechanism includes a horizontal center track 191 defined in the headrest

support 130." Ex. 10 at 6:62–65. Figs. 9 and 16 show track 191 (highlighted in blue with headrest support 130 in pink), which is just a channel.



Fig. 9            Fig. 16

Ex. 1 at Figs. 9, 16 (annotated). During his deposition, Mr. Campbell reiterated the track or channel was the movable guide bar/lock bar in his anticipation analysis. Ex. 9 at 48:6–49:12; 70:18–72:6.[7] Mr. Campbell conceded at his deposition this track or channel is not a bar.

> Q:  Is it your testimony that the channel 191 in Dingman -- can we call it a channel, horizontal center track I think you call it?
>
> A.  A channel.
>
> Q.  Is that channel a bar, yes or no?
>
>                    . . .
>
> A.  It is not a separate bar.

---

[7] Although Mr. Campbell called horizontal center track 191 a "tube," he explained "the 'tube' in the Dingman '854 Patent is formed from the back portion of the seat rather than as a separable 'tube' piece," and later admitted track 191 is not actually a tube. Ex. 8 at ¶ 20. In his deposition, Mr. Campbell admitted "[a] channel is not exactly the same as a tube." Ex. 9 at 73:11–15.

Q.  And in the SafeGuard car seat there's a channel you mentioned earlier. Do you recall that?

A.  Yes.

Q.  Is that channel a bar?

A.  As with this patent, it's not a separate bar.

Ex. 9 at 71:14–72:6.

Although Mr. Campbell argued a person of ordinary skill in the art would understand that a track, like a bar, is a "common way[] to form a structure containing spring-biased headrest locking pins to allow for adjustment of the headrest" (Ex. 8 at ¶ 20), this is not the test for anticipation. Anticipation requires all elements be in the "four corners" of the prior art exactly as arranged in the claims. *Cheese Sys.*, 725 F.3d at 1351; *see also Callaway Golf*, 576 F.3d at 1346. Mr. Campbell's position that the track is equivalent to a bar is an argument for obviousness under 35 U.S.C. § 103(a), not anticipation. *See In re NTP, Inc.,* 654 F.3d 1279, 1302 (Fed. Cir. 2011) ("While the PTO argues that Telenor teaches something equivalent to the use of packets, the reference does not disclose that a single packet may contain originated information from a plurality of originating processors. . . . Keeping in mind that these are anticipation, not obviousness rejections, the failure to disclose this claim element requires reversal of these rejections. It is axiomatic that for anticipation, *each and every* claim limitation must be explicitly or inherently disclosed in the prior art." (citations omitted))*.* That statement amounts to a concession that Dingman and the SafeGuard car seat do not anticipate the claims.

Because the only references Mr. Campbell cited as anticipating the asserted claims of the '117 and '725 patents lack a movable guide bar or a lock bar, those references do not anticipate the asserted claims of the '117 and '725 patents as a matter of law.

4.    **As a matter of law, none of the references Evenflo asserts against the claims of the '294 patent anticipates those claims**

a)    **The SafeGuard and Triumph car seats and the Barger patent do not anticipate the asserted claims of the '294 patent because they do not have a harness storage cavity sized to receive latch members and a harness buckle**

The '294 patent describes a convertible child carrier that allows a user to switch between a car seat, which secures a child using a five-point harness, and a booster seat, which secures the child using the car's seat belts. Ex. 3 at 1:14–18. Earlier convertible car seats often required disconnecting the harness when switching to a booster seat, which raised the possibility of losing, misplacing, or throwing away the harness.

The '294 patent describes and claims a car seat "formed with a harness storage cavity in the car seat shell for placement of the five-point harness to permit the conversion of the car seat into a belt positioning booster configuration without requiring the harness to be removed from the car seat shell." *Id.* at Abstract. This allows "the five-point harness to be stowed out of the way without requiring the harness to be removed from the car seat shell." *Id.* at 2:14–16.

Evenflo asserts that two car seats (the SafeGuard and Triumph car seats), a U.S. patent (Barger), and a Japanese patent application (Nakagawa) each anticipate the asserted claims of the '294 patent. The two car seats are not designed to convert into a booster seat, and Barger, which Evenflo represents shows the Triumph car seat,[8] also only describes a non-convertible car seat.[9] Summary judgment is appropriate because it is undisputed that the references do not have a

---

[8] *See* Ex. 9 at 109:14–20.

[9] In his Reply Report, Mr. Campbell stated that "[t]he presence of the shoulder belt guides in [Figs. 12 and 13] clearly indicate to a POSA that a belt positioning, harness-less booster mode was contemplated in Barger" (Ex. 8 at ¶ 121), but Barger says nothing about a booster mode conversion into a booster seat, and since Evenflo indicated Barger was the same as the non-convertible Triumph (Ex. 9 at 109:14–20), Mr. Campbell's opinion is pure speculation, especially since Barger indicates the shoulder belts in Figs. 12 and 13 do not restrain the child as in a booster seat.

harness storage cavity, or that the car seats in these references were ever converted into a booster seat. Evenflo argues that the prior art has voids that could be a harness storage cavity but there is no evidence they are a harness storage cavity, which is what the claims require.

Nakagawa describes a convertible car set, but it is an integral part of a vehicle passenger seat that, as Mr. Campbell conceded, does not disclose a rigid shell containing a harness storage cavity. In addition, it does not disclose shoulder belts protruding from the cavity when stored.

**(1)    The asserted claims of the '294 patent all require a "harness storage cavity," which means a cavity that stores a harness**

Mr. Campbell asserts the SafeGuard and Triumph car seats and Barger have some volume that "can be used to store the latch members and harness buckle," regardless of whether that volume was ever used in that manner. Ex. 8, ¶¶ 66, 99. This is another admission of no infringement. Mr. Campbell concedes that the SafeGuard and Triumph car seats and Barger have no cavity that stores harnesses, and he offers no explanation why anyone would store harnesses anywhere in those references because the harnesses need to secure the child. Whatever cavities are in those seats, they are not for storing harnesses.

At best this is a claim-construction issue. Does "harness storage cavity" mean a volume where harnesses have been stored or is for storing harnesses, as Wonderland believes, or does the term means some volume large enough to fit harnesses, regardless of whether the volume has any relation to harness storage, as Evenflo suggests. E.g., Ex. 8, ¶¶ 66-67, 99. Claim construction is a legal matter appropriate for courts to undertake in motions for summary judgment. *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed. Cir. 1995).

Claim construction begins with the words of the claim. Independent claim 1, and claims 2 and 4 that depend from claim 1, recite:

> a harness storage cavity formed in said rigid shell . . . , said harness storage cavity being sized to receive said latch members and said harness buckle[10] below said cover, said harness cavity further being formed with slots to permit said shoulder straps and said belt straps to project from said harness storage cavity when said cover is closed and said harness buckle and said latch members are positioned within said harness storage cavity."

Ex. 3 at 6:31–40. Claim 6, and claims 7–10 that depend from claim 6, have a similar limitation. *Id.* at 7:17–27.

Claim 12 recites:

> a harness storage cavity formed as a recess in said child car seat . . . , said harness storage cavity being sized to receive at least one of said harness buckle and said latch members below said cover, . . . said belt straps projecting out of said harness storage cavity through slots formed in said harness storage cavity when said cover is closed and said harness buckle and said latch members are positioned within said harness storage cavity.

*Id.* at 7:59–8:8. Independent claim 13, from which claims 14–16 depend, recites "storing said harness buckle and said latch members in a harness storage cavity formed as a recess in said rigid shell." *Id.*, 8:26–28.

The words of the claims receive the meaning a person of ordinary skill in the art would give them in light of the specification and prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee

---

[10] The claim defines the harness as "including a pair of laterally spaced shoulder straps supported at one end from said rigid shell and terminating at an opposing end as belt straps supported from said rigid shell, said harness also including a crotch strap connected to said first portion of said rigid shell, said harness further including a pair of latch members, each said latch member being connected to one of said shoulder straps, said latch members being engagable [sic] with a harness buckle connected to said crotch strap." Ex. 3 at 6:22-30.

regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112, ¶ 2). Unless the patent or prosecution history contains an express intent to impart a novel meaning to a claim term, the Court should give the words in the term the ordinary and customary meanings one of ordinary skill in the art would. *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Hoechst Celanese Corp. v. BP Chems, Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)).

The meaning of "harness storage cavity" has no ambiguity. It defines a cavity that stores harnesses. The cavity may be large enough to store countless other things, but the Court would have to ignore words in the claims to avoid restricting the term it to its actual or specified use, storing harnesses, and that would be improper. *See, e.g.*, *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1105 (Fed. Cir. 1996) (finding improper a construction that would ignore explicit limitations in the claim); *see also Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991) ("All the limitations of a claim must be considered meaningful.").

The context of the term is important as well. *Vitronics*, 90 F.3d at 1582; *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). In *Profectus Technology LLC v. Huawei*, 823 F.3d 1375 (Fed. Cir. 2016), the plaintiff proposed construing a "mountable" picture frame as one that could be mounted rather than designed to be mounted. *Id.* at 1380. The Federal Circuit rejected this proposal, explaining:

> When read in view of the specification, the claims do not permit the expansive construction proposed by Profectus. The term "mountable" is a modifying word in the claims: "mountable picture display" (claims 1, 13, 22, 29, 31); "mountable picture frame" (claims 1, 22, 29); "wall mountable" (claims 6, 13, 22, 31); "desk top mountable" (claims 6, 22). Absent from the claims are words that embrace broader meaning, such as "capable of," "adapted to," or "configured to." The claim language is tailored to, characterizes, and delimits the claimed "picture frame" and "picture display."

*Id.* at 1381. In affirming the district court's construction and summary judgment ruling, the Federal Circuit noted all the examples in the specification showed some feature indicating the picture frames were designed to be mounted. *Id.*

In the '294 patent, most claims recite that the harness storage cavity is "sized to receive" harness hardware such as buckles and latch members, and belt straps project from the harness storage cavity through slots, both of which support the construction of "harness storage cavity" as a cavity that actually stores a harness.

The specification does not suggest a different construction. The patent explains, "To convert the car seat from the car seat configuration shown in FIG. 1 to the belt positioning booster configuration shown in FIG. 8, the harness 20 is stored in the harness storage cavity." Ex. 3 at 4:63–66. What follows are specific instructions.

The prosecution history is also in accord. The examiner and the applicant always referred to a harness storage cavity as a cavity for storing harnesses (Ex. 7 at 48–49 (Non-Final Rejection); *id.* at 59, 64–66 (Amendment); *id.* at 80–82 (Final Rejection) ("Applicant acknowledges that Gunji shows a cavity formed within a car seat shell where the vehicle belts can be positioned to secure the child seat to the vehicle seat. Applicant however argues that Gunji does not teach or suggest the provision of the harness storage cavity"); *id.* at 93–94 (Amendments After Final Rejection); *id.* at 99–100 (Amendment and Request for Continued Examination) and argued whether storing parts of the harness in multiple cavities supports a claim to multiple cavities. *E.g.*, *id.* at 78–79 (Final Rejection), 99 (Amendment). Nothing in the claims, the specification, or the prosecution history supports Evenflo's proposal that a harness cavity merely be a volume large enough to store the harness.

        **(2)**     **There is no evidence the SafeGuard and Triumph car seats have a cavity that stored harnesses or that Barger discloses such a cavity**

The SafeGuard and Triumph car seats are car seats that do not convert into a booster seat. Ex. 8 at ¶¶ 65–66 (Safeguard), ¶ 99 (Triumph). Barger describes such a car seat as well. *Id.* at ¶ 113 (Barger). Mr. Campbell agreed. Ex. 9 at 94:4–9 (Safeguard), 95:15–19 (Triumph), 109:14–20 (confirming that Barger is the same as the Triumph). There is no evidence the manufacturers of the SafeGuard and Triumph car seats ever instructed customers to use any space in those seats for storing harnesses, and Barger has no such suggestion. *See id.*; *see also* Ex. 11. There was no reason to do so because those seats were not approved for use as booster seats, which would have required modification and certification, which did not occur. Ex. 15, ¶¶ 190–94.

Because these references lack a limitation all asserted claims of the '294 patent recite, they do not anticipate those claims as a matter of law. The Court should grant summary judgment of no anticipation of those claims by these three references.

        **b)**     **The SafeGuard and Triumph car seats and the Barger patent also do not anticipate method claims 13–16 of the '294 patent because there is no evidence of anyone performing or being motivated to perform the steps in those claims before the filing date of the '294 patent**

To anticipate the method claims, Evenflo needs to show the SafeGuard and Triumph car seats have been used to perform every step of the claimed methods of claims 13–16 of the '294 patent. *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008) ("anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim*"). Mr. Campbell has cited no evidence of anyone converting the SafeGuard or Triumph car seats to booster seats in the prior art, and there is no evidence of anyone ever performing the method steps in claims 13–16: (a) storing the harness buckle and latch members in a harness storage cavity by (1) opening a cover to provide access to said

harness storage cavity, (2) placing the latch members and harness buckle into the harness storage cavity, and (3) closing the cover to conceal the harness buckle and latch members; or (b) locating all the straps projecting from slots in the harness storage cavity. Barger discloses none of those steps either. Mr. Campbell offered no proof of anticipation of claims 13–16 by these seats as a matter of law. Instead, Mr. Campbell's claim charts merely indicate the possibility that the method might have been performed (Ex. 5 at 150–64, 213–18), but that is not enough. *EMI Grp. N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1351 (Fed. Cir. 2001) (citing *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981) ("The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." (emphasis in original)).

Barger does not disclose these steps either (Ex. 5 at 247–51), so it too does not anticipate these claims as a matter of law.

    c) **Nakagawa does not anticipate claims 1, 2–4, 6–10, 13–16 because it does not disclose a harness storage cavity formed in a rigid shell**

Claims 1, 2–4, 6–10 and 13–16 require a harness storage cavity in a rigid shell of the car seat. Nakagawa shows a children's seat "incorporated into an adult seat" in a car. Ex. 12 at

¶ (0002). Figure 3 shows such a seat:



For Nakagawa, Mr. Campbell asserted the rigid shell included the back piece 200 (blue, below) and a harness storage cavity 206 (purple, below). Ex. 9 at 103:23–105:1. Figure 4 shows these elements:



Ex. 9 at Fig. 4 (annotated). During his deposition, Mr. Campbell admitted the harness storage cavity 206 was not in back piece 200, the only part of what Mr. Campbell called the rigid shell of Nakagawa close to cavity 206.

Q. Is 206 a space that's behind 200?

A. Yes.

. . .

Q. If you look at the claim on claim 1-- this is in the fourth paragraph -- it says there's a harness storage cavity formed in said rigid shell. Now you identified 200 as [at] least part of the rigid shell, and 206 is right behind it. Is 206 formed in 200 is my question?

A. 206 is not formed into 200.

Ex. 9 at 105:2–14. This admission requires summary judgment that Nakagawa does not, as a matter of law, anticipate claims 1, 2–4, 6–10 and 13–16 of the '294 patent because it does not teach a harness storage cavity formed in a rigid shell.

> **d)    Nakagawa does not anticipate claims 1, 2–4, 6–10, and 12–16 because it does not disclose shoulder straps projecting from a harness storage cavity**

Claim 12 requires "shoulder straps and said belt straps projecting out of said harness storage cavity through slots formed in said harness storage cavity when said cover is closed and said harness buckle and said latch members are positioned within said harness storage cavity." Ex. 3 at 8:4–8. Claims 1, 2–4, and 10 have a similar limitation. *Id.*, claims 1, 2–4, and 10. Claims 6–9 do not recite slots but do require "said shoulder straps and said belt straps projecting out of said harness storage cavity along said rigid shell." *Id.* at 7:25–27.

The '294 patent claims recite both shoulder straps and belt straps. *Id.* at 6:22–25, 8:1–5, 8:21–23. The patent explains, "One skilled in the art will recognize that the shoulder strap 21 and the belt strap 22 on each respective side of the car seat 10 are formed from a single harness web that has [] opposing ends connected to the seat shell 16 at appropriate locations." *Id.* at 4:17–21, Fig. 1 ('294 patent). Although the shoulder straps and belt straps may be formed from the same strap (web), as Figure 1, below, shows, the shoulder straps 21 (red), which go over the child's shoulders, are connected by a chest clip 26 (purple). *Id.* at 4:26–31. The belt straps 22 (blue) are more horizontal. *Id.* at 4:11–17 (explaining the five-point harness "includes a pair of generally

vertically oriented shoulder straps 21" (red) and "a pair of generally horizontally oriented belt straps 22" (blue)).



Fig. 1

*Id.* at Fig. 1 (annotated).

Nakagawa refers to shoulder straps and belt straps together as "shoulder belts." Ex. 12 at ¶ (0026). Although Nakagawa calls belt straps 80 and 82 "shoulder belts," to anticipate the claims of the '294 patent, Nakagawa must disclose both shoulder strap and belt straps. There is only one way this is possible. Figure 3, annotated below, shows that the top parts of straps 80 and 82 are shoulder straps (red) and the bottom parts are belt straps (blue). *See also*, *id.* at ¶¶ (0034), (0044); Ex. 3 at 4:11–17 (explaining a five-point harness, when the latch members are

engaged with the harness buckle, includes "a pair of vertically oriented shoulder straps" and a pair of "horizontally oriented belt straps").



*Id.* at Fig. 3 (annotated).

In Figure 2,[11] below, Nakagawa shows the lower portions of shoulder belts 80 and 82 (the belt straps, blue) projecting from the cavity 206, but the top parts, the shoulder straps, do not.



*Id.* at Fig. 2 (annotated).[12]

None of these facts is in dispute. They require a finding of summary judgment of no anticipation by Nakagawa for all asserted claims of the '294 patent.

## III.    INTRODUCTION FOR DAUBERT MOTION

Evenflo's damages expert, Melissa Bennis, relies on Evenflo's technical expert for several opinions Mr. Campbell never put in his expert reports. She used Mr. Campbell's opinions to conclude 1) low-cost, acceptable non-infringing alternatives were available at the time of the hypothetical negotiation; 2) the features the asserted patents cover did not drive sales of Evenflo

---

[11] Mr. Campbell's Reply Report cites this figure as showing "belt straps projecting from the bottom of the indicated cover outline when the cover is in place." Ex. 8 at 82.
[12] The middle strap projecting from the cavity 206 is crotch strap 90.

products; and 3) royalty rates in the industry are generally lower when licensing a discrete feature instead of an entire product. Mr. Campbell, by his own admission, had no proper basis for the opinions Ms. Bennis cited, so the Court should strike all portions of Ms. Bennis's opinions that rely on improper input from Mr. Campbell.

## IV.    LEGAL STANDARDS FOR DAUBERT MOTION

### A.    The Court Should Only Permit Opinion Testimony from a Qualified Expert Using Proper Techniques and Reliable Evidence

Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). To be admissible, an expert opinion must be from a qualified expert, reliable, and relate to the facts. *See generally Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320–21 (3d Cir. 2003). "[T]the reliability analysis [*Daubert* requires] applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). "When there is a serious question of reliability of evidence, it is appropriate for the court to exercise to some degree an evidentiary screening function." *United States v. Downing*, 753 F.2d 1224, 1240 n.21 (3d Cir. 1985) (citations omitted).

Federal Rule of Evidence 703 also applies. The Third Circuit explained,

> We now make clear that it is the judge who makes the determination of reasonable reliance, and that for the judge to make the factual determination under Rule 104 (a) that an expert is basing his or her opinion on a type of data *reasonably* relied upon by experts, the judge must conduct an independent evaluation into reasonableness. The judge can of course take into account the particular expert's opinion that experts reasonably rely on that type of data, as well as the opinions of other experts as to its reliability, but the judge can also take into account other factors he or she deems relevant.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994) (emphasis in original).

Motions to exclude evidence are committed to the Court's discretion. FED. R. EVID.

702(b)-(d); *Paoli R.R. Yard*, 35 F.3d at 749.

### B. Reliance on Undocumented or Unreliable Testimony from Another Expert Renders an Expert's Opinion Unqualified and Unreliable

Under appropriate circumstances, one expert can rely on a second expert's testimony. *See*

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2012 WL 6562221, at \*14

(W.D. Pa. Dec. 15, 2012) (citing *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613

(7th Cir. 2002)). This is proper only when the second expert's testimony is reliable and not

speculative. *W.L. Gore & Assocs. v. C.R. Bard, Inc.*, No. 11-515-LPS-CJB, 2015 WL 12731924,

at \*15 (D. Del. Oct. 23, 2015).

## V. ARGUMENT

### A. The Court Should Strike from Evenflo's Damages Expert Report all Instances Where She Relied on Unreliable Evidence from Evenflo's Technical Expert

Ms. Bennis's rebuttal damages expert report relies on Mr. Campbell's opinions on

matters for which he has no expertise and has provided no basis for his opinions, so Wonderland

seeks to exclude the portions of Ms. Bennis's opinions on pages 24, 35, 42–43, 44, 45, 52, 54,

56–57, and 64 as based on unreliable information.

#### 1. To rely on another expert's opinions on the acceptability, cost, and non-infringing nature of an alternative, Evenflo's damages expert needed to show those opinions were reliable

In *MOSAID Technologies Inc. v. LSI Corp.*, No. 10-192-RGA, 2014 WL 807877, at \*4

(D. Del. Feb. 28, 2014) (Andrews, J.), this Court excluded damages testimony based on a

document the expert could not verify. The opinion cited *ZF Meritor, LLC v. Eaton Corp.*, 696

F.3d 254, 292 (3d Cir. 2012), which affirmed the district court's decision to strike an expert's

damages opinion because it was not based on reliable data. The opinion acknowledged, "In some

circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.*

      2.    **Evenflo's damage expert should not be able to rely on any opinions from Evenflo's technical expert about non-infringing alternatives because there is no analysis**

In her expert report, Ms. Bennis relied exclusively on conversations with Mr. Campbell about acceptable, low-cost, non-infringing alternatives to each of the patents-in-suit as a justification for a low reasonable royalty. She did not explain the content of her opinions; she just provided bare citations to conversations with Mr. Campbell. Her citations never explained why the alternatives were acceptable or low cost, or how their implementation in the accused EveryStage car seat avoided infringement. She never even explained why Mr. Campbell's opinions were reliable, which she needed to do because Mr. Campbell's three expert reports say nothing about these matters.

For the '117 and '725 patents, Ms. Bennis's report set forth her understanding that "a single-step adjustable harness and headrest for a child car seat existed before the invention of the patents-in-suit," referring to the SafeGuard car seat and U.S. Patent No. 7,246,854, and she concludes, from a conversation with Mr. Campbell, that "as such, there existed an acceptable noninfringing alternative to the harness/headrest patents that could have been implemented by Evenflo in its EveryStage car seat at the time of the hypothetical negotiation at no additional development and/or implementation costs." Ex. 13 at 42–43.

For the' 294 patent, Ms. Bennis's report sets forth her understanding that "it would take a relatively simple modification to have the EveryStage be a product with harness storage that would not be alleged to infringe the '294 patent." *Id.* at 44. She concludes, based on conversations with Mr. Campbell, that a system in Pub. No. US 2009/012790 entitled "Child's

Car Seat Harness Storage System" "would have been an acceptable non-infringing alternative to the harness storage patent of Wonderland that could have been implemented by Evenflo in its EveryStage car seats at the time of the hypothetical negotiation at little additional development and implementation cost." Ex. 13 at 44–45.

Ms. Bennis's reliance on Mr. Campbell's statements is particularly problematic because Ms. Bennis admits her area of expertise is limited to "[t]he assessment of damages." Ex. 14 at 25:15–18. This required her to demonstrate that Mr. Campbell's opinions were reliable. *See W.L. Gore*, 2015 WL 12731924, at *6–7.

She relies on Mr. Campbell's opinion that acceptable non-infringing alternatives were available and could have been implemented at little or no cost (Ex. 14 at 73:23–76:12; 85:23–87:8), but Mr. Campbell's reports never discuss these alternatives.

This situation is similar to that in *W.L. Gore*, where this Court found a damages expert's report unreliable when it cited technical expert reports that "contain no opinions (or really even any mention)" of the technical analysis. *See W.L. Gore*, 2015 WL 12731924, at *6. Mr. Campbell's reports, like the report addressed in *W.L. Gore*, fail to "articulate a fully formed view" on acceptable non-infringing alternatives. *See id.* This Court concluded:

> Therefore, the current state of play is that [the technical expert] will not be expected to testify on the Goldfarb patent's comparability to the asserted patents, nor would he be subject to cross-examination on those topics. (D.I. 257 at 4) And in such a circumstance, [the damages expert] could not simply testify at trial (as she did during her deposition) about what [the technical expert] previously *said to her* about the topics. (*See, e.g.*, Stamm Dep. at 224–25) In that scenario, [the damages expert] would be simply repeating [the technical expert's] views on technological comparability without applying her own experience or methodology to those views; this would amount to the transmission of hearsay to the jury, which is not permissible.

*Id.*

For Ms. Bennis's reliance on Mr. Campbell's opinions to pass muster under *Daubert*, Mr. Campbell's underlying opinions must be of record. *Id.* at *6–7 (citations omitted). Because they are not of record, the Court should exclude Ms. Bennis's opinions at pages 42, 43, 44, and 45 of her Rebuttal Report (Ex. 13) that rely on Mr. Campbell's opinions about non-infringing alternatives.

This case is more egregious than *W.L. Gore* because Mr. Campbell never performed the analysis on which he based his opinions. He admitted he never tried to modify the accused product to have the non-infringing alternative design, nor is he aware of any other efforts to do so, which would have made it more important to explain in detail how to make the modifications to support his bare conclusions. He testified at his deposition as follows:

> Q.    Are you aware of any attempts by you or anyone else to design -- to change the design of the EveryStage in such a way to make an acceptable non-infringing alternative?
>
> A.    I'm not aware of any activity there, no.

Ex. 9 at 119:18–23.

### 3.    Mr. Campbell's opinions are also deficient because he never explained how the alternatives were acceptable.

Another problem with Ms. Bennis's reliance on Mr. Campbell's conclusions is that the mere existence of a non-infringing alternative is not sufficient for a reasonable royalty analysis: The proffered alternative must be feasible or "acceptable." *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372–73 (Fed. Cir. 2008); *see also TQP Dev. v. Merrill Lynch & Co.*, No. 2:08-CV-471-WCB, 2012 WL 3283354, at *1 (E.D. Tex. Aug. 10, 2012) (Bryson, J., sitting by designation) (citing *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353–54 (Fed. Cir. 1999)). In determining whether a non-infringing alternative is feasible, courts consider whether "(1) the defendant could readily obtain all of the material needed to implement the non-

infringing alternative; (2) the non-infringing alternative was well known in the field at the time

of infringement; and (3) the defendant had all of the necessary equipment, know-how, and

experience to use the non-infringing alternative." *LaserDynamics, Inc. v. Quanta Computer, Inc.*,

No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011) (citing *Grain Processing*,

185 F.3d at 1353–54). The *LaserDynamics* court elaborated on the reason for its conclusion.

> In *Grain Processing*, the Federal Circuit explained that, when an alleged alternative
> is not on the market during the accounting period, the court may reasonably infer
> that it was not available as a non-infringing alternative. . . . The court must proceed
> with caution in assessing proof of the availability of substitutes not actually sold
> during the period of infringement because only those substitutes that the infringer
> proves were "available" during the accounting period can limit a patentee's
> damages—substitutes only "theoretically possible" will not.

*Id.* at *2 (internal citations omitted).

Neither Ms. Bennis nor Mr. Campbell explains how Evenflo would have modified the

accused EveryStage car seat to include the alternatives, whether that would have affected the

timing of the safety certifications needed, what delays the modifications would have entailed,

what packaging or documentation (e.g., instruction manuals) needed to change and how quickly

that could occur, and whether the modifications would have affected other parts of the seat.

There is no evidence of why these alternatives would have been acceptable, such as how "the

defendant could readily obtain all of the material needed to implement the non-infringing

alternative" or that "the defendant had all of the necessary equipment, know-how, and

experience to use the non-infringing alternative." *Id.* at *3.

### 4. Evenflo's damages expert cannot rely on any opinions from its technical expert about marketing or licensing because the technical expert is not qualified to provide opinions about marketing or licensing and has provided no basis for these opinions

Ms. Bennis's Rebuttal Report includes several conclusions related to marketing and

licensing. She opines (1) "the extent to which the patents-in-suit would offer any value to the

possibility of repeat or future purchases would be limited; therefore, it is not likely that customers are purchasing EveryStage based on the specifications asserted by the patents-in-suit, let alone purchasing accessories" (Ex. 13 at 35, 64–65); (2) "the harness storage system is not what makes the products that embody the '294 patent sell" (*id.* at 52); (3) "the perceived value and extent of use of consumers would likely be higher for the harness/headrest feature than the harness storage feature" (*id.* at 56); (4) "industry royalty rates paid for the development of a discrete feature are generally lower than royalty rates paid for the development of an entire product" (*id.* at 54); and (5) in analyzing the relevance of another royalty rate from a separate license to the facts of this case, "the Sensorsafe functionality was intended to be a feature that was continuously in use given its nature as a monitoring device for parents/caregivers to provide a reminder of the child's presence in the car seat once the car engine ignition is switched off, as opposed to the patents-in-suit which were only intended for limited use when adjustment or storage was needed" (*id.* at 24).

The first three opinions are directed to marketing, specifically the sales and value of the accused product. The fourth and fifth are directed to licensing and royalty rates. Ms. Bennis admitted that her area of expertise is limited to "[t]he assessment of damages." Ex. 14 at 25:15–18.

She relies on Mr. Campbell to support each statement. Ex. 13 at 24, 35, 52, 54, 56, and 64–65; Ex. 14 at 63:7–64:20; 66:5–68:24; 70:20–73:12. Again, she does not explain the underlying analysis resulting in these conclusions. Even worse, Mr. Campbell's opinions on marketing and licensing went beyond his expertise. Mr. Campbell admitted he is not a marketing or licensing expert:

> Q.    For purposes of your report and your expert report and the rebuttal report, the final report, what do you consider yourself to be an expert in, what field?

> A.      I consider myself to be an expert in children's products design, development, testing and compliance.
>
> Q.      And does that include being an expert in marketing issues?
>
> A.      I'm not an expert in marketing issues.

Ex. 9 at 26:16–27:1.

> Q.      Last question. Are you an expert in licensing?
>
> A.      In licensing?
>
> Q.      Yes. Patent licensing in particular?
>
> A.      Patent licensing, no.

*Id.* at 119:24–120:4. Mr. Campbell is not qualified to provide expert opinions on marketing and licensing under Rule 702. *See In re Gabapentin Patent Litig.*, No. 2-00-cv-02931, 2011 WL 12516763 (D.N.J. Apr. 8, 2011) (partially granting a motion to exclude expert testimony outside the expert's expertise).

Neither Mr. Campbell's three expert reports nor Ms. Bennis's report includes information or analysis regarding how he reached his conclusions on which features of the accused products drive sales, the perceived value of different features, or what the appropriate royalty rate would be for a particular license. His reports contain no mention of licensing or sales. *Id.* Expert opinions are "unreliable" when they "contain no opinions (or really even any mention)" of the details upon which another expert relies. *W.L. Gore*, 2015 WL 12731924, at *6–7.

Wonderland therefore asks the Court to strike the portions of Ms. Bennis's report on pages 24, 35, 52, 54, 56, and 64–65 that rely on Mr. Campbell for licensing or marketing expertise.

## VI.    CONCLUSION

Wonderland respectfully requests the Court grant summary judgment that the '294 patent is not invalid as indefinite or lacking a sufficient written description, and that none of Evenflo's

references anticipates the asserted patents. Wonderland also respectfully requests the Court preclude testimony by Ms. Bennis that rely upon or are based upon opinions or information from Mr. Campbell—specifically the portions of Ms. Bennis's opinions found on pages 24, 35, 42–43, 44, 45, 52, 54, 56–57, and 64 of her expert report, and those portions of her report be stricken as based on unreliable information.

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Gary C. Ma
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
3300 Hillview Avenue
Palo Alto, CA  94304
(650) 849-6600

E. Robert Yoches
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Benjamin R. Schlesinger
Kara A. Specht
R. Maxwell Mauldin
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
271 17th Street, NW, Suite 1400
Atlanta, GA  30363-6209
(404) 653-6400

Dated:  September 22, 2020