IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WONDERLAND SWITZERLAND AG,<br><br>      Plaintiff,<br><br>    v.<br><br>EVENFLO COMPANY, INC.,<br><br>      Defendant. | Civil Action No. 18-1990-RGA |

MEMORANDUM OPINION

Steven J. Balick, ASHBY & GEDDES, Wilmington, DE; E. Robert Yoches (argued), Benjamin R. Schlesinger, Kara A. Specht, FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP, Washington, DC; Michael J. Songer (argued), Shamita Etienne-Cummings, WHITE & CASE, Washington, DC; Bijal Vakil, WHITE & CASE, Silicon Valley, CA.

      Attorneys for Plaintiff.

Jennifer A. Ward, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Jeffrey Lyons (argued), BAKERHOSTETLER, Wilmington, DE; John M. Mueller (argued), BAKERHOSTETLER, Cincinnati, OH.

      Attorneys for Defendant.

January 5, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court are Defendant's Motion for Summary Judgment (D.I. 108) and Plaintiff's Motion for Summary Judgment (D.I. 113). The matters have been fully briefed. (D.I. 109, 115, 124, 126, 130, 131). I heard oral argument on November 2, 2020. (D.I. 144).

## I. PROCEDURAL BACKGROUND

Plaintiff Wonderland Switzerland AG filed this lawsuit against Defendants Evenflo Company, Inc. and Goodbaby U.S. Holdings[1] on December 14, 2018, asserting infringement of U.S. Patent Nos. 7,862,117 ("the '117 patent"), 8,087,725 ("the '725 patent"), and 8,123,294 ("the '294 patent") (collectively, "the Asserted Patents"). (D.I. 1). Defendant moves for summary judgment of invalidity due to anticipation under 35 U.S.C. § 102 for claims 9 and 10 of the '117 patent; claims 1, 2, 7, 21, and 22 of the '725 patent; and claims 1, 2, 4, 6–10, and 12–16 of the '294 patent (collectively, "the Asserted Claims"). (D.I. 108). Defendant also moves for summary judgment that Evenflo's product does not infringe the asserted claims, Plaintiff is not entitled to damages, and that the opinion of Plaintiff's damages expert, Mr. Schoettelkotte, should be excluded. (*Id.*). Plaintiff, on the other hand, moves for summary judgment of non-anticipation for the asserted claims of the '117, '725, and '294 patents. (D.I. 113). Plaintiff also moves for summary judgment that the '294 patent is not invalid as indefinite or as lacking a sufficient written description. (*Id.*).

Following oral argument, I issued an oral order denying Plaintiff's partial Daubert motion to exclude Defendant's damages expert, with leave to renew as a motion in limine in connection with the pretrial order. (D.I. 142). I also noted Defendant's withdrawal of its written description

---

[1] Goodbaby was terminated as a party when it was not named as a defendant in the First Amended Complaint. (D.I. 36).

invalidity argument and its agreement not to develop any further its indefiniteness invalidity argument, though preserving any indefiniteness challenge previously raised in connection with the Markman hearing. (D.I. 143).

The remaining issues, therefore, are: (1) whether to grant any portion of the cross-motions for summary judgment relating to anticipation of the Asserted Claims by Defendant's proffered references; and (2) whether to grant any portion of Defendant's motion for summary judgment of non-infringement of the Asserted Claims.

## II.  FACTUAL BACKGROUND

The '117 and '725 patents are titled "Headrest and Harness Adjustment for Child Car Seat" and share a common specification. (D.I. 1-1, Ex. A, B). The asserted claims for these patents are directed to "transporting children in an automobile" using a "positionally adjustable head rest cooperable with a movable harness that relocates in response to the positional adjustment of the head rest." (*Id.*, Ex. A, at 2:47–51). The '294 patent is titled "Harness Storage System for Child Car Seats." (*Id.*, Ex. C). The asserted claims for the '294 patent are directed to "a harness storage system in a child's car seat to allow the five-point harness to be stowed out of the way without requiring the harness to be removed from the car seat shell." (*Id.*, Ex. C, at 2:13–16). The accused product, the EveryStage, is a convertible car seat that can be used interchangeably in rear-facing, front-facing, and booster seat configurations. (D.I. 110–1, Ex. E, at 1).

## III.  LEGAL STANDARD

### A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

### B. Anticipation

A patent claim is held invalid as anticipated if "within the four corners of a single, prior art document . . . every element of the claimed invention [is described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (alterations in original). Proving anticipation requires clear and convincing evidence that "a single prior art reference not only discloses all of the elements of the claim within the four

4

corners of the document, but also discloses those elements arranged as in the claim." *Cheese Sys. Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013). Although ordinarily a question of fact, anticipation is ripe for resolution at summary judgment when "the record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010).

### C. Noninfringement

Infringement of a patent occurs when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent[.]" 35 U.S.C. § 271(a). "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998).

## IV. DISCUSSION

### A. Anticipation

At the outset, the parties dispute the relevant legal standard for determining whether the Asserted Claims are anticipated by Defendant's prior art references. Plaintiff points to a statement by Defendant's expert, Mr. Campbell, admitting that he "do[es] not personally believe the structure disclosed in the Dingman '854 patent and the IMMI SafeGuard seat literally teach the identical corresponding structures in the '117 Patent claims." (D.I. 116-1, Ex. 5 at ¶ 27; ¶ 35 (stating the same for the '725 patent)). This admission, Plaintiff argues, puts forth a position that improperly conflates infringement and invalidity analysis, which are "separate matters under patent law." *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1928 (2015).

Defendant, on the other hand, argues that "when an accused product and the prior art are closely aligned, it takes exceptional linguistic dexterity to simultaneously establish infringement

and evade invalidity." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742–43 (Fed. Cir. 2018). Defendant contextualizes Mr. Campbell's opinion under this framework, arguing that his opinion that the SafeGuard anticipates the asserted claims of the '117 and '725 patents is simply based on Plaintiff's expansive interpretation of the scope of its claim when arguing infringement. (D.I. 126 at 17).

The Federal Circuit has made clear, "Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Electronics Corp. v. PDI Communication Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). To prevail on its summary judgment motion for non-anticipation, therefore, Plaintiff needs to show that at least one limitation in each of the Asserted Claims is not disclosed by the prior art references Defendant has put forth.

Defendant has asserted five prior art references and products that it maintains anticipate the Asserted Claims of the '117, '725 and '294 patents. At summary judgment, Defendant moves that one of them—the SafeGuard car seat—anticipates; Plaintiff moves that none of them do. (D.I. 109 at 4-32; D.I. 115 at 7-27).

First, U.S. Patent No. 7,246,854 to Dingman ("Dingman") discloses a child car seat with "a seat portion and a headrest assembly." (D.I. 116-2, Ex. 10 at Abstract). The headrest assembly can be moved vertically "in relation to the seat portion," and the seat includes a harness system with a "shoulder belt portion" extending through a hole in the headrest assembly and a "crotch belt assembly that is movable in relation to the seat portion." (*Id.*). Dingman issued on July 24, 2007, and claims priority to provisional application No. 60/619,182, filed on October 15, 2004. (*Id.*, Ex. 10 at Cover).

Second, the SafeGuard car seat ("SafeGuard") is a commercial embodiment of Dingman. (D.I. 116-1, Ex. 5 at 14; D.I. 110-2, Ex. G (Dingman Decl.) ¶¶ 3, 8). The parties dispute whether the SafeGuard was publicly available before the priority date of the '117 and '725 patents. (D.I. 124 at 4–6; D.I. 126 at 5). Because there is at least some evidence of manufacture of the SafeGuard as early as June 2, 2006, which comes before the priority date of Dec. 12, 2006 for the '117 and '725 patents,[2] I will assume for purposes of these motions that Dingman and the SafeGuard have priority dates that make them prior art.[3]

Third, U.S. Patent No. 6,695,412 to Barger ("Barger") discloses a car seat with "adjustable shoulder harnesses" that are "movable relative to the seat pan to raise or lower the height of the shoulder harnesses." (D.I. 116-2, Ex. 11 at Abstract). The car seat also includes "a locking mechanism for locking each shoulder harness in place to set the height of each shoulder harness relative to the seat pan, wherein the locking mechanism can be accessed from the front side of the seat back." (*Id.*). Barger was filed on June 20, 2001 and issued on February 24, 2004. (*Id.* at Cover).

Fourth, the Evenflo Triumph 359 car seat ("Triumph") is a commercial embodiment of Barger. (*Id.*, Ex. 9 (Excerpt of Campbell Dep. Tr.) at 109:14–20). The Triumph was publicly available by 2002. (D.I. 116-1, Ex. 5 at 4).

Fifth, Japanese Patent No. 3,127,638 to Nakagawa ("Nakagawa") discloses a car seat that allows for storage of a "child restraint seat belt" to convert the child seat into a booster seat without having the seat belt "spread across the back surface of the child seat back board." (D.I.

---

[2] The priority date for the '117 and '725 patents is disputed.  Defendant states in a footnote that a "cursory review" shows that the asserted claims are not in the provisional application dated December 12, 2006.  Defendant states the priority date is therefore the filing date of December 9, 2007.  (D.I. 131 at 5 n.2).
[3] If I were going to grant Defendant's motion, I would have to do more than assume the prior art status of the SafeGuard.

7

116-2, Ex. 12 at 2). Nakagawa was filed on December 17, 1992 and registered on November 10, 2000. (*Id.* at Cover).

### 1. '117 and '725 Patents

Plaintiff argues that Defendant's proffered prior art references, Dingman and the SafeGuard car seat, do not anticipate the '117 and '725 patents because they do not disclose a "movable guide bar" ('117 patent[4]) or a "lock bar" ('725 patent[5]). (D.I. 115 at 10–11). Both the "movable guide bar" and "lock bar" refer to the same structure identified in the identical specifications of the two patents (the '725 patent is a continuation of the '117 patent) as lock bar 42. (D.I. 1-1, Ex. B at 1; D.I. 1-1, Ex. A at 6:10–17, 6:52–7:2).

The "movable guide bar" in the Asserted Claims of the '117 patent is (1) part of the head rest, (2) "vertically movable along said openings in response to a corresponding vertical movement of said head rest relative to said seat back," and (3) "operable to direct said harness belt through openings in said seat back." (*Id.*, Ex. A at 9:1–29). The "lock bar" in the Asserted Claims of the '725 patent (1) is part of "a locking mechanism mounted on said head rest," (2) is used to "engage said control rack to secure said head rest into one of the plurality of selected vertical positions," (3) can be moved with selected "engagement portions" to fix the head rest in "the corresponding selected vertical position," and (4) is connected with the harness belts "so that said harness belts will move vertically in response to a corresponding vertical movement of said head rest." (*Id.*, Ex. B at 7:44–10:55). All claims recite a "bar." During claim construction I held that "bar" carries its plain and ordinary meaning and requires no additional construction. (D.I. 72 at 4–5).

---

[4] All asserted claims of the '117 patent (9 and 10) recite a "movable guide bar." (D.I. 1-1, Ex. A at 9:1–29).
[5] All asserted claims of the '725 patent (1, 2, 7, 21, and 22) recite a "lock bar." (D.I. 1-1, Ex. B at 7:44–10:59).

Plaintiff asserts that the "center track"—the structure in Dingman and the SafeGuard corresponding to the "movable guide bar" or "lock bar"—is a channel rather than a "bar." (D.I. 115 at 12). During his deposition, Defendant's expert, Mr. Campbell, stated that the "center track" in Dingman "is not a separate bar." (D.I. 116-1, Ex. 9 at 71:14–72:6). Plaintiff argues that this amounts to a concession by Defendant that its asserted prior art references do not disclose the "movable guide bar" or "lock bar" and therefore do not anticipate. (D.I. 115 at 14).

Defendant, on the other hand, argues that Mr. Campbell in his deposition only stated that a "channel" is not a "*separate* bar" (D.I. 116-1, Ex. 9 at 71:14–7:26) (emphasis added), leaving unanswered the question of whether a "channel" is a "bar" as claimed in the '117 and '725 patents (D.I. 126 at 18–19). Defendant also argues that Plaintiff should be bound to its expansive interpretation of "bar," which includes not only solid rods but also, for example, "tubes" or "hollow bars" with spring-biased pins. (*Id.* at 19). During claim construction, Defendant notes, Plaintiff argued against limitations on the term "bar," including "relatively long," "straight," "rigid," and made of a "solid material." (D.I. 58 at 17). Defendant maintains, therefore, that the "bar" at issue does not need to be "separable," so the "center track" does in fact recite the "bar" claimed in the '117 and '725 patents. (D.I. 126 at 19-20).

Although Defendant's point that Plaintiff argued for an expansive interpretation of "bar" at claim construction is noted,[6] I disagree that it matters here. Even an expansive interpretation of "bar" does not mean that a spatial void (i.e. the "channel track") is a physical object (i.e. the "bar"). Defendant noted in oral argument that the "channel track" is a "space in which you can fit a pencil . . . . It's kind of an indentation in [the] back panel." (D.I. 144 at 36:8–15). Although I appreciate that the "channel track" and the "movable guide bar" or "lock bar" may accomplish

---

[6] Plaintiff's proposed construction was "rod." (D.I. 72 at 4). Even assuming that "rod" is a broader construction than "bar," no reasonable fact-finder could conclude that a "void" is a rod.

9

similar functions, the ordinary and plain meaning of a "bar" at minimum refers to a physical object and not a space. I held during claim construction that the "bar" at issue here could be solid, hollow, rigid, or flexible, among other permutations of physical characteristics. (D.I. 72 at 4–5). This holding assumes at baseline, however, that the "bar" is a physical entity. Because the "channel track" is an indentation and not a physical entity, it cannot be a "bar" as recited in the asserted claims. Defendant's proffered prior art references—Dingman and SafeGuard—therefore do not recite the "movable guide bar" or "lock bar" claim terms and do not anticipate the '117 and '725 patents.

### 2. '294 Patent

The '294 patent recites a child car seat that includes a five-point harness storage system that "allow[s] the car seat to be converted from a car seat for small children to a belt positioning booster for larger children." (D.I. 1-1, Ex. C at 1:14–19). The seat includes a "harness storage cavity" that allows "the five-point harness to be stowed out of the way without requiring the harness to be removed from the car seat shell." (*Id.* at 2:14–16). All asserted claims of the '294 patent require a "harness storage cavity." (*Id.* at 6:16–8:64).

Plaintiff argues that the SafeGuard, Triumph, and Barger do not anticipate the asserted claims of the '294 patent because each lacks a "harness storage cavity." Although Plaintiff acknowledges that these prior art references may have spaces that could be used to store harnesses, it argues that these do not constitute "harness storage cavities" because these spaces are not specifically designated "for storing harnesses." (D.I. 115 at 15–16). Defendant, on the other hand, asserts that the Safeguard, Triumph, and Barger disclose spaces that are capable of being used "for storing harnesses" and therefore are "harness storage cavities." (D.I. 126 at 22). The issue is one of claim construction.

10

The parties agreed at oral argument that "harness storage cavity" means a "volume or space for storing harnesses" but disputed whether to further limit the construction to a "volume or space for storing harnesses *with no other purpose than to store harnesses*." (D.I. 144 at 25–35) (emphasis added). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2015) (en banc) (internal quotation marks omitted). "[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted).

Claims 1, 2, and 4 of the '294 patent recite:

> a harness storage cavity formed in said rigid shell and including a cover forming a smooth support over said harness storage cavity, said harness storage cavity being sized to receive said latch members and said harness buckle below said cover, said harness cavity further being formed with slots to permit said shoulder straps and said belt straps to project from said harness storage cavity when said cover is closed and said harness buckle and said latch members are positioned within said harness storage cavity.

(D.I. 1-1, Ex. C at 6:31–40).

Claims 6–10 have a similar limitation. (*Id.* at 7:17–46).

Claim 12 recites:

> a harness storage cavity formed as a recess in said child car seat . . . , said harness storage cavity being sized to receive at least one of said harness buckle and said latch members below said cover, . . . said belt straps projecting out of said harness storage cavity through slots formed in said harness storage cavity when said cover

11

>>is closed and said harness buckle and said latch members are positioned within said harness storage cavity.

(*Id.* at 7:59–8:8). Claims 13–16 recite "storing said harness buckle and said latch members in a harness storage cavity formed as a recess in said rigid shell." (*Id.* at 8:26–28).

The claim language teaches that the "harness storage cavity" must be "sized to receive" the harness buckle and latch members below the cover, which preliminarily indicates that the "harness storage cavity" was designed with the purpose of storing harness and latch components in mind. Admittedly, nothing in the claim language or specification indicates that the "harness storage cavity" must be used exclusively for the purpose of storing the harness and latch components. The claims do, however, in addition to reciting that the "harness storage cavity" is "sized to receive," recite that the belt straps project from the harness cavity through slots, which would make the "harness storage cavity" the natural repository for the harness hardware. Indeed, the specification teaches that when converting from a car seat to a booster seat, the "harness [] is stored in the harness storage cavity." (D.I. 1-1, Ex. C at 4:63–66).

Taken together, the claim language and specification indicate that the "harness storage cavity" is designed for the purpose of storing the harness hardware but is not exclusively limited to that function. I therefore construe "harness storage cavity" to mean "volume or space for storing harnesses." Not any volume or space large enough to store the harnesses is sufficient to meet the claims, though, as the Asserted Claims contain various structural limitations relating to, for example, a cover and slots. (D.I. 1-1, Ex. C at 6:31-40 (claim 1)).

The question, then, is whether the SafeGuard, Triumph, or Barger references discloses a "harness storage cavity." Plaintiff argues there is no evidence the manufacturers of the SafeGuard and Triumph instructed customers to use any available spaces in those car seats to store harnesses. (D.I. 115 at 20). Defendant, on the other hand, argues that the harness hardware

can fit into spaces in both the SafeGuard and Triumph car seats (D.I. 116-1, Ex. 5, Ex. C1 at 21, 32) and that a person of ordinary skill in the art "'would immediately understand the desirability of using the identified cavity' of the SafeGuard to store the harness" (D.I. 126 at 27) (citing D.I. 116-2, Ex. 8 at ¶80). Neither of Defendant's points is dispositive because the claim construction of "harness storage cavity" requires that the cavity be *for* storing harness rather than merely *capable* of storing harnesses, which Defendant incorrectly asserts is sufficient to meet the claim limitation. (D.I. 126 at 23). Regardless of whether the cavities in the SafeGuard and Triumph can store the harness hardware, nothing in their specifications indicates that harness storage is a feature of the inventions or an intended use of any space in the car seat. These references therefore do not disclose a "harness storage cavity" as used in claims 1, 2, 4, 6–10, and 12.

      These four references also do not anticipate method claims 13–16, which recite the process of converting a car seat from a child's seat into a booster seat. (D.I. 1-1, Ex. C at 8:10–38). Defendant noted at oral argument that it would be impossible to convert the SafeGuard into a booster seat without cutting the crotch strap, which would destroy the SafeGuard's capacity to function as a child car seat. (D.I. 144 at 26:16–21). While Defendant argues that the claim language does not disclose a method of re-conversion, the specification explicitly mentions the process of "re-conversion of the belt positioning booster configuration to the car seat configuration." (D.I. 1-1, Ex. C at 5:54–6:05). Because the crotch strap cannot physically be in the "harness storage cavity" unless it is cut (D.I. 144 at 27:4–16), and there is no evidence that anyone has ever actually done so with the SafeGuard or Barger (D.I. 144 at 29:14–30:4), it is not plausible to suggest that a process which renders the invention unusable for its intended purpose is disclosed by the claim language. These references also therefore do not disclose a "harness storage cavity" as used in method claims 13–16.

Unlike the other prior art references, Nakagawa does have a "harness storage cavity." Nakagawa discloses a car seat that can be interchangeably converted from a child seat to an adult seat by placing a cover over the harness hardware. (D.I. 116-2, Ex. 12 at 6). When the cover is placed over the harness, it creates a cavity—identified as "housing space" 206—that houses the harness hardware. (*Id.* at 6–7).

Although there is at least a question of fact whether the "harness storage cavity" in Nakagawa is formed in a rigid shell (D.I. 126 at 27–28; D.I. 116-2, Ex. 9 at 103:23–105:1; D.I. 115 at 22–24), the reference does not disclose straps that project out of the "harness storage cavity" through slots formed when the cover is closed while housing the harness hardware in the cavity, as is recited by claims 1, 2, 4, 6–10, and 12. Fig. 2 of the Nakagawa patent illustrates this most clearly; although the bottom of the harness straps are visible when the cover is placed, there are no slots in the cover through which the harness hardware would be brought forward with the cover in place. (D.I. 116-2, Ex. 12 at 7–8). The Nakagawa reference therefore similarly does not anticipate the asserted claims of the '294 patent.

Anticipation requires that a prior art reference disclose "all of the elements of the claim within the four corners of the document." *Cheese Sys. Inc.*, 725 F.3d at 1351. Because none of Defendant's proffered references discloses all elements of any of the Asserted Claims, I will grant Plaintiff's motion for summary judgment that Defendant's proffered prior art references do not anticipate the Asserted Claims. I will deny the Defendant's motion for summary judgment that the SafeGuard anticipates the asserted claims.

### B. Infringement

Defendant moves for summary judgment of non-infringement for each of the Asserted Claims, arguing that the accused product does not include at least one limitation for each Asserted Claim and therefore does not infringe. (D.I. 109 at 32–40).

### 1. '117 Patent

Defendant asserts that the accused product does not infringe the '117 patent because it does not include (1) a fixed guide bar mounted "above" the openings in the seat back, or (2) a movable guide bar that directs the harness belts to pass through openings in the seat back. (*Id.* at 32).

Much of the non-infringement dispute for the claims of this patent centers on the parties' disagreement over the meaning of "above" in relation to the asserted claims. The parties agreed at oral argument that "above" did not need further claim construction, and that, rather, claim terms involving "above" should be subject to contextual evaluation. (D.I. 144 at 70:17–22, 72:10–15; *see also* D.I. 72 at 7-8).

Defendant's expert, Mr. Campbell, states that "the part of the opening that actually functions to receive the harness belts therethrough is actually above the fixed guide bar." (D.I. 120-1, Ex. O at ¶ 47). Plaintiff's expert, Mr. Myers, notes instead that the fixed guide bar is mounted "above" the openings in the seat back. (*Id.*, Ex. R at ¶¶ 26–30). Mr. Myers specifically articulates that even though it may seem like the openings go "above" the fixed guide bar, the top of the opening cannot actually receive the harness belts and therefore should not be considered to be "above" the fixed guide bar. (*Id.* at ¶ 30). Summary judgment of non-infringement is therefore not appropriate on these grounds because there is material dispute of fact.

Defendant hypothesizes that the position of the belts coming through the openings in the seat back would not change even without the movable guide bar, but it does not present expert

15

opinion or other credible evidence to support this assertion. (D.I. 109 at 35). Plaintiff, on the other hand, cites to its expert's statement that the path of the harness belts depends on the objects they contact because the belts themselves have no stable structure; the belts' contact with the movable guide bar keeps the belts passing through the openings in the seat back. (D.I. 120-1, Ex. R at ¶ 49). Thus, Plaintiff's evidence creates an issue of disputed material fact.

Summary judgment of non-infringement is therefore not appropriate for the asserted claims of the '117 patent.

### 2. '725 Patent

Defendant asserts that the accused product does not infringe claims 1 or 2 of the '725 patent because it does not include harness belts connected to a lock bar, nor claims 7, 21, or 22 of that patent because the accused product does not include a fixed guide bar mounted above the control rack. (D.I. 109 at 35).

Defendant cites to its expert to make the point that the lock bar's contact with the belt guides—rather than the harness straps—causes vertical motion. (D.I. 120-1, Ex. O at ¶¶ 99–103). Pointing to Mr. Myers' statements, Plaintiff contends that the lock bar is in fact connected with the harness belts because it affects their position and operation. (*Id.*, Ex. R at ¶¶ 78–83). Because there is a genuine factual dispute, summary judgment of non-infringement on this basis is not appropriate.

Regarding the fixed guide bar,[7] Defendant argues that because the top three positions of the EveryStage's control rack extend past, or above, the fixed guide bar, the fixed guide bar is not mounted above the control rack. (D.I. 144 at 67:7–68:6). Plaintiff responds by arguing that because the fixed guide bar is mounted above seven of ten vertically spaced engagement portions

---

[7] Claims 7, 21, and 22 require "a fixed guide bar mounted in said seat back above said control rack." (D.I. 1-1, Ex. B at 9:33-39 and 10:48-49).

(D.I. 120-1, Ex. R at ¶¶ 90–91), there is at least a dispute of material fact as to whether the fixed guide bar is above the control rack (D.I. 124 at 24). Although Plaintiff's point is noted that those top three positions are only used when the car seat is in booster mode (D.I. 144 at 68:17–23), those positions are nevertheless part of the control rack and unequivocally lie above the fixed guide bar (*id.* at 70:12–16). There is no material dispute that the fixed guide bar is not mounted above the control rack. Summary judgment of non-infringement is therefore appropriate for claims 7, 21, and 22 of the '725 patent.

### 3. '294 Patent

Defendant asserts that the accused product does not infringe claims 1, 2, 4, 10, or 12–16 of the '294 patent because it does not have a harness storage cavity with "slots" to permit shoulder and belt straps to project outward from the cavity. (D.I. 109 at 37). Defendant also asserts that the accused product does not infringe claims 1, 2, 4, 6–10, or 12–16 because it does not have a cover that forms a smooth support over the harness storage cavity. (*Id.*)

Defendant argues that any "gaps" are spaces created by the "manufacturing tolerances of the cover" rather than dedicated slots to allow projection of shoulder and belt straps from the harness storage cavity. (*Id.* at 39) (citing *Id.*, Ex. O at ¶ 156). Plaintiff asserts instead that the shoulder and belt straps can project from the harness storage cavity through slots formed by "gaps" in the design of the back part of the harness storage cavity. (D.I. 120-1, Ex. R at ¶ 129–31). Because there is a dispute of material fact, summary judgment of non-infringement is inappropriate.

Defendant also asserts that the cover over the harness storage cavity is not flush against the rigid shell and therefore is not "smooth" as understood in the context of the '294 patent or by a person of ordinary skill in the art. (D.I. 109 at 40) (citing *Id.*, Ex. O at ¶¶ 142–43). Plaintiff

17

refutes this characterization, citing to its expert's statement that, in fact, "when the cover . . . is closed, it lies directly over the harness storage cavity and the back rest. Contrary to Mr. Campbell's assertion, the EveryStage car seat's cover is flush." (D.I. 124 at 28) (citing D.I. 120-1, Ex. R at ¶ 114). Summary judgment of non-infringement is inappropriate because there is a dispute of material fact.

## V. CONCLUSION

For these reasons, I will grant Plaintiff's Motion for Summary Judgment of non-anticipation, deny Defendant's Motion for Summary Judgment of anticipation, and partially grant Defendant's Motion for Summary Judgment of noninfringement for claims 7, 21, and 22 of the '725 patent.

An Order consistent with this opinion will be entered.