## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WONDERLAND SWITZERLAND AG,

      Plaintiff,

      v.

EVENFLO COMPANY, INC.,

      Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  18-cv-1990-RGA

**JURY TRIAL DEMANDED**

## WONDERLAND'S POST TRIAL BRIEF ON EVENFLO'S INFRINGEMENT OF
## U.S. PATENT NOS. 7,862,117, 8,087,725, AND 8,123,294 AND DAMAGES

*Of Counsel:*

Michael J. Songer
Shamita Etienne-Cummings
David M. Tennant
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005-3807
(202) 626-3600

Bijal Vakil
Henry Y. Huang
WHITE & CASE LLP
3000 El Camino Real
Palo Alto, CA  94306-2109
(650) 213-0300

Dated:  March 22, 2021

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

{01672585;v1 }

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     INFRINGEMENT...................................................................................................1

        A.      The Asserted Patents and the EveryStage Seats ..........................................1

        B.      Relevant Infringement Stipulations .............................................................2

        C.      The EveryStage Seats Meet Every Element of the '294 Patent Claims ......2

                1.      Claim 1..............................................................................................3

                2.      Claim 6..............................................................................................8

                3.      Claim 8..............................................................................................9

                4.      Claim 10..........................................................................................10

                5.      Claim 12..........................................................................................10

                6.      Claim 13..........................................................................................11

                7.      Claim 15..........................................................................................15

        D.      The EveryStage Seats Meet Every Element of the '725 Patent, Claim 1 ..15

        E.      The EveryStage Seats Meet Every Element of the '117 Patent, Claim 9 ..19

III.    Evenflo Infringes Literally and Under the Doctrine of Equivalents, Regardless of the ACCUSED EveryStage SEATS' Configuration...........................................23

        A.      The Accused EveryStage Seats Infringe Despite Non-Infringing Modes of Operation.....................................................................................................24

        B.      Alternatively, Evenflo Infringes Under the Doctrine of Equivalents ........25

                1.      The '294 Patent...............................................................................27

                        a.      **"Smooth Cover"**.............................................................27

                        b.      **Slots to Permit Straps to Project From Harness Storage Cavity** ................................................................28

                        c.      **The Equivalents Were Not Surrendered By The Prosecution of the '294 Patent** .......................................30

                2.      The '117 Patent...............................................................................32

IV.     Wonderland is Entitled to REasonable Royalty Damages....................................33

        A.      Evenflo's Expert Considered Incomparable Licenses To Drive Down The Overall Reasonable Royalty Rate..............................................................34

B.    Mr. Schoettelkotte's Apportionment Analyses Confirm His Opinions.....35

V.    MARKING ...............................................................................................................38

VI.    CONCLUSION........................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Cardiovascular Sys., v. Scimed Life Sys.*,
261 F.3d 1329 (Fed. Cir. 2001)..................................................................................................2

*Arctic Cat Inc. v. Bombardier Recreational Prods.*,
876 F.3d 1350 (Fed. Cir. 2017)................................................................................................38

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
406 F.3d 1365 (Fed. Cir. 2005)................................................................................................14

*Babby v. City of Wilmington Dep't of Police*,
614 F. Supp. 2d 508 (D. Del. 2009) (Farnan, J.) ....................................................................39

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020)....................................................................................26, 30, 32

*C R Bard Inc. v. Angiodynamics, Inc.*,
979 F.3d 1372 (Fed. Cir. 2020)................................................................................................14

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
958 F.3d 1348 (Fed. Cir. 2020)..................................................................................................3

*Colli v. Wirth*,
94 Civ. 3234 (LBS), 1996 U.S. Dist. LEXIS 11176 (S.D.N.Y. Aug. 6, 1996) ......................39

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
899 F.3d 1356 (Fed. Cir. 2018)................................................................................................24

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005)..................................................................................................3

*Dean v. Brandywine Studios*,
No. 99-679-KAJ, 2003 U.S. Dist. LEXIS 2299 (D. Del. Feb. 10, 2003) ................................39

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012)................................................................................................26

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004)................................................................................................14

*Eli Lilly & Co. v. Hospira, Inc.*,
933 F.3d 1320 (Fed. Cir. 2019)..........................................................................................30, 32

*Endo Pharms. Inc. v. Amneal Pharms., LLC*,
224 F. Supp. 3d 368 (D. Del. 2016)...................................................................39

*Ericsson, Inc. v. D-Link Sys.*,
773 F.3d 1201 (Fed. Cir. 2014)........................................................................34

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002)........................................................................................25

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010).......................................................................37

*Funai Elec. Co., Ltd. V. Daewoo Elecs. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010).......................................................................32

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001).......................................................................38

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)............................................................33, 34

*Heritage Handoff Holdings, LLC v. Fontanella*,
No. 1:16-cv-00691-RGA, 2019 U.S. Dist. LEXIS 93112 (D. Del. June 4,
2019) (Andrews, J.).........................................................................................39

*Hilgraeve Corp. v. Symantec Corp.*,
265 F.3d 1336 (Fed. Cir. 2001).......................................................................25

*IBM v. Priceline Grp. Inc.*,
271 F. Supp. 3d 667 (D. Del. 2017)................................................................38

*Insituform Techs., Inc. v. Cat Contr., Inc.*,
385 F.3d 1360 (Fed. Cir. 2004).......................................................................32

*Intel Corp. v. United States ITC*,
946 F.2d 821 (Fed. Cir. 1991).........................................................................25

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001).......................................................................23

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)...........................................................................34

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009).......................................................................34

*M2M Solutions LLC v. Motorola Solutions, Inc.*,
No. 12-33-RGA, 2016 U.S. Dist. LEXIS 872
(D. Del. Jan. 6, 2016)................................................................................................25

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..................................................................................................13

*Petree v. Victor Fluid Power, Inc.*,
831 F.2d 1191 (3d Cir. 1987)...................................................................................39

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
843 F.3d 1315 (Fed. Cir. 2016).................................................................................14

*Ricoh Co., Ltd. v. Quanta Comput. Inc.*,
550 F.3d 1325 (Fed. Cir. 2008).................................................................................13

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007)..................................................................................................39

*Scott v. Vantage Corp.*,
Nos. 20-1054, 20-1055, 20-1137, 2021 U.S. App. LEXIS 3242 (3d Cir. Feb.
5, 2021) .....................................................................................................................39

*SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*,
859 F.2d 878 (Fed. Cir. 1988).....................................................................................2

*Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*,
No. 17-1734-RGA, 2021 U.S. Dist. LEXIS 49067 (D. Del. Mar. 16, 2021) .........37

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015).................................................................................38

*TWM Mfg. Co. v. Dura Corp.*,
789 F.2d 895 (Fed. Cir. 1986)...................................................................................38

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008).................................................................................26

*Warner-Lambert Co. v. Teva Pharms., USA, Inc.*,
418 F.3d 1326 (Fed. Cir. 2005)...................................................................................2

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
824 F.3d 1344 (Fed. Cir. 2016).................................................................................13

*Wenger Mfg. v. Coating Mach. Sys., Inc.*,
239 F.3d 1225 (Fed. Cir. 2001)...................................................................................2

*z4 Techs., Inc. v. Microsoft Corp.*,
   507 F.3d 1340 (Fed. Cir. 2007) ...................................................................................25

## STATUTES AND RULES

35 U.S.C. § 271 ............................................................................................................1

35 U.S.C. § 287 ....................................................................................................38, 39

Fed. R. Civ. P. 16(d) .................................................................................................39

Fed. R. Civ. P. 16(e) .................................................................................................39

## I.    INTRODUCTION

Wonderland's three asserted patents all relate to car seat features that have improved transportation convenience and safety for parents and children.  The patented features include a novel harness storage system claimed in U.S. Patent No. 8,123,294 (JTX-428) (the "'294 patent"), and a unique combination head rest and harness adjustment system claimed in U.S. Patent Nos. 8,087,725 (JTX-426) (the "'725 patent") and 7,862,117 (JTX-424) (the "'117 patent") (collectively, the "patents-in-suit").  During the four-day trial, Wonderland introduced evidence—including technical drawings from Evenflo—clearly demonstrating Evenflo's infringement of the three patents-in-suit.  The evidence further showed that Evenflo has infringed both literally and under the doctrine of equivalents, and both directly and by inducement.  In light of this infringement, Wonderland established its entitlement to a reasonable royalty of at least $845,528.  Wonderland's expert demonstrated why the patented features are valuable to Evenflo, and why Evenflo's damage analysis is not proper.  Wonderland respectfully requests that the Court compensate it in full for Evenflo's prolonged and continuing infringement of the asserted patents.[1]

## II.    INFRINGEMENT

### A.    The Asserted Patents and the EveryStage Seats

During the trial, Wonderland presented evidence that Evenflo's EveryStage LX, DLX, and Gold models of car seats (the "accused EveryStage seats") infringe claims 1, 6, 8, 10, 12, 13, and 15 of the '294 patent, claim 1 of the '725 patent, and claim 9 of the '117 patent (the "Asserted Claims") under 35 U.S.C. § 271.  All of the accused EveryStage seats are equivalent

---

[1] As directed by the Court, Wonderland's Post Hearing Brief addresses infringement, damages and marking.  Tr. at 951:5-10; 953:14-18.  Wonderland will respond to Evenflo's brief on validity according to the Court's schedule.

and operate in the same manner for purposes of infringement of the asserted patents.  Tr. at 300:20-302:4.  Wonderland thus met its burden of proving infringement by a preponderance of the evidence.  *Advanced Cardiovascular Sys., v. Scimed Life Sys.,* 261 F.3d 1329, 1336 (Fed. Cir. 2001); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). Through the testimony and exhibits, Wonderland demonstrated that it is more likely than not that Evenflo infringes the Asserted Claims.  *See Warner-Lambert Co. v. Teva Pharms., USA, Inc.*, 418 F.3d 1326, 1341-42 (Fed. Cir. 2005).

### B.      Relevant Infringement Stipulations

Evenflo stipulated to several facts regarding infringement, including the following:

- Wonderland owns all three asserted patents.  Pretrial Order, III.A. ¶¶ 5, 8, and 10.

- Evenflo has made, used, sold, and offered for sale the accused EveryStage seats in the United States.  Pretrial Order, III.A. ¶ 12.

- Evenflo provides the accused car seats to other entities for re-sale, and stipulated that it encourages and is aware that customers in the United States use the car seats in their vehicles.  Pretrial Order, III.A. ¶¶ 13-15.

- Evenflo provides customers with instructions and assistance on how to use and install the car seats.  Pretrial Order, III.A. ¶¶ 16-18.

### C.      The EveryStage Seats Meet Every Element of the '294 Patent Claims

An accused product literally infringes when it contains each and every limitation of the claim.  *Wenger Mfg. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001) ("Literal infringement requires that every limitation of the patent claim be found in the accused [infringing] device.") (citation omitted).  Infringement is determined on an element-by-element basis; if each and every element of the claim is present in the accused device, then the device

literally infringes the claims.  *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).  The evidence shows that the accused EveryStage seats meet all elements of '294 patent claims 1, 6, 8, 10, 12, 13, and 15 and thus infringes those claims.  This evidence includes testimony from Wonderland's expert (Pete Myers), EveryStage CAD drawings, and various other analyses.  *See* Tr. at 359:1-389:12; *see also* JTX-351; PTX-515); PTX-516.  Infringement of each specific claim is set forth below.

### 1.  Claim 1

Claim 1 of the '294 patent is an independent claim that addresses a car seat with a harness storage cavity.  It recites the following elements:

| '294 cl. 1 | Element |
|---|---|
| [preamble] | A car seat for transporting a child in an automobile, comprising: |
| [a] | seat member having a first portion of a rigid shell; |
| [b] | a back rest projecting upwardly from a rear portion of said seat member and having a second portion of said rigid shell; |
| [c] | a harness including a pair of laterally spaced shoulder straps supported at one end from said rigid shell and terminating at an opposing end as belt straps supported from said rigid shell, said harness also including a crotch strap connected to said first portion of said rigid shell, said harness further including a pair of latch members, each said latch member being connected to one of said shoulder straps, said latch members being engagable with a harness buckle connected to said crotch strap; and |
| [d] | a harness storage cavity formed in said rigid shell and including a cover forming a smooth support over said harness storage cavity, said harness storage cavity being sized to receive said latch members and said harness buckle below said cover, said harness cavity further being formed with slots to permit said shoulder straps and said belt straps to project from said harness storage cavity when said cover is closed and said harness buckle and said latch members are positioned within said harness storage cavity. |

**Elements 1[a], 1[b], and 1[c].**  There is no dispute that the accused EveryStage seats satisfy claim elements 1[a], 1[b], and 1[c].[2]  Mr. Myers explained how the accused EveryStage

---

[2] Generally, preambles are not limiting, and Evenflo has not contended that they are limiting for any Asserted Claims here.  *See Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1354 (Fed. Cir. 2020) ("We have stated that as a general rule preamble language is not treated as limiting.") (quotation and citation omitted).

seats include the claimed "seat member," "back rest," and "harness" features recited in these three claim elements. Tr. at 359:8-24, 360:2-14; *see also* JTX-351 at 36-39. Evenflo and its expert do not contest these elements. Tr. at 668:1-7.

**Element 1[d].** The accused EveryStage seats meet the requirements of claim element 1[d], the harness storage cavity with a cover forming a smooth support, formed with slots to project out of the cavity when the cover is closed. Mr. Myers, in conjunction with Evenflo's drawings, demonstrated this infringement. Tr. at 360:15-371:13; *see also* JTX-351 at 41-42, 46, 63; JTX-473 at WL-0128718, -722. Evenflo challenged three aspects of this element: 1) that the "purpose" of the cavity is not to store harnesses; 2) that the cover does not form a "smooth support" when closed over the cavity; and 3) that the cavity is "formed with slots." However, none of these challenges have merit, and infringement of element 1[d] exists.

First, Evenflo argued that this element is not in the accused EveryStage seats because the "purpose" of the cavity in the accused EveryStage seats is not to store harnesses and the cavity allegedly was not designed for that purpose. Tr. at 668:8-669:11. Evenflo's position is incorrect because there is no claim requirement that the harness storage cavity be intended or designed for that purpose. The Court construed this term to mean "volume or space for storing harnesses," without imposing an "intent" requirement, and rejecting the view that the cavity must be "exclusively limited to that function." Mem. Op. at 12 (Jan. 5, 2021), D.I. 152. There is no dispute that the accused EveryStage seats' cavity can store harnesses as claimed. Moreover, even if the claim required a certain intent by the product designer (which it does not), Evenflo designed the cavity to store harnesses and instructed its users to store the harness in that cavity when converting to booster mode. Tr. at 384:20-385:22, 214:7-24; JTX-2 at EVE-000341 (shown below).



**4.** Reassemble the loose crotch buckle onto the shoulder straps and fasten the chest clip.

Flip the crotch buckle over the assembled chest clip.

Push the fully assembled harness into the open compartment as shown.

Accordingly, there can be no dispute that the accused EveryStage seats contain a harness storage cavity.

Defendants also argue that the seats do not have "a smooth support over said harness storage cavity" due to the presence of a small, shallow "H" shaped depression located within it. Tr. at 669:12-671:22.  The cover of harness storage cavity is shown in "gold" color below:



Confidential            PTX-516            WL-0128704

PTX-516 at WL0128704.  Wonderland's expert, Mr. Myers, testified that the accused EveryStage seats meet the requirement that the cover forming a smooth support over the cavity. Tr. at 360:15-362:24.  Mr. Myers testified that the slight indentation does not change that the cover is smooth.  Tr. at 361:7-362:24 ("I can run my hand up and down it.  There's nothing that

scratches me or impedes the travel, so this is very much a smooth cover."). He also explained that the cover on the accused EveryStage seats did not result in any discomfort to the child caused by the indentation. Tr. at 420:11-421:17.[3] Indeed, as Evenflo confirmed, the accused EveryStage seats meet federal regulations with respect to protrusions or obstructions on car seat backrests, which prohibit protrusions on the backrest that are more than three-eighths of an inch. Tr. at 204:14-205:5;[4] JTX-351 at 46.

Finally, Defendant challenges whether the accused EveryStage seats meet the requirement that the harness storage cavity be "formed with slots to permit said shoulder straps and said belt straps to project from said harness storage cavity when said cover is closed." This challenge is unfounded, as there is no dispute that space exists such that when the cover is closed the straps project from the storage cavity to meet the claim limitation.

The Court determined that "slots" does not require construction. Mem. Op. at 6-7 (Jan. 23, 2020), D.I. 72. Mr. Myers demonstrated how the accused EveryStage seats' back rest cover has gaps that allow the harness belts to project when the cover is closed. Tr. at 365:18-371:13 ("It just allows a little extra room so that when you close the lid, those straps can easily project out."). Wonderland's expert applied the Court's construction and opined that the slots exist because the openings on the car seat when the cover is closed permit the straps to project from the cavity, as demonstrated by the seat itself:

---

[3] The Court determined that "smooth" does not require construction. In so doing, the Court rejected Evenflo's argument that "smooth" be defined as a surface free from irregularities, roughness, or projections." Mem. Op. at 6 (Jan. 23, 2020), D.I. 72.
[4] *See* section III.B, *infra.*



JTX-351 at 46.

Defendant's expert admitted that the cavity is formed with spaces such that the straps can project from the cavity when the storage cover is closed. Tr. at 724:23-725:19 (Campbell: "There is a space there and the belts are coming out through that, yes."). To avoid infringement, however, Defendant's expert further testified that even though the limitation was met, infringement could not occur because the slots were formed due to "manufacturing tolerances" and that there was "no specific slot design for the belts." Tr. at 672:2-24. This argument is incorrect. The claims do not limit how or why the slots were created, and do not require a particular "tolerance" or indentation. The claims only require slots that allow "said shoulder straps and said belt straps to project from said harness storage cavity when said cover is closed." JTX-428 ('294 patent), cl. 1[d]. The particularities of the manufacturing process and the subjective intent of the EveryStage designers is irrelevant to how the accused products function. The evidence thus demonstrates that the accused EveryStage seats possess the claimed "slots."

### 2. Claim 6

Claim 6 of the '294 patent is the second independent claim that addresses a car seat with a harness storage cavity. It recites the following elements:

> [a] In a car seat having a seat back supported on a seat member and projecting upwardly therefrom, said seat member having a first portion of a rigid shell and a seat pad mounted on the rigid shell, said back rest having a second portion of a rigid shell on which a back panel pad and a head rest pad are supported, each of said back panel pad and said head rest pad being selectively removable from said rigid shell; and a harness including a pair of laterally spaced shoulder straps supported from said rigid shell, a pair of laterally spaced belt straps connected to said rigid shell, and a crotch strap connected to said rigid shell, said harness including a pair of latch members, each said latch member being connected to one of said shoulder straps and to a corresponding said belt strap, both said latch members being engagable with a harness buckle connected to said crotch strap, the improvement comprising:

> [b] a harness storage cavity formed in said rigid shell and including a cover forming a smooth support when closed over said harness storage cavity, said harness storage cavity being sized to receive said latch members or said harness buckle, said shoulder straps and said belt straps are positionable behind said back panel pad and said head rest pad and against said rigid shell to permit said latch members or said harness buckle to be stored in said harness storage cavity <u>with said shoulder straps and said belt straps projecting out of said harness storage cavity along said rigid shell</u>.

Unlike claim 1, claim 6 does not recite having the harness storage cavity being formed with "slots," but merely that the straps be positionable behind the various pads so as to permit the latch members to be stored in the cavity, with the shoulder and belt straps "projecting out" of the cavity. (The relevant claim language is underlined above).

The accused EveryStage seats meet the requirements of claim 6. To the extent the preamble (identified as 6[a] at trial) recites elements for the claim, those elements are present in the accused EveryStage seats. Tr. at 371:14-375:19; *see also* JTX-351 at 36-37, 39-41, 49, 55, 57. The accused EveryStage seats also satisfy claim element 6[b], including the presence of a harness storage cavity with "said belt straps projecting out of the harness storage cavity along the rigid shell." Tr. at 375:20-377:11; *see also* JTX-351 at 52.

Evenflo does not contest that the accused EveryStage seats meet the limitations and have the elements set forth in the preamble of claim 6.  Tr. at 668:1-7.  In addition, Evenflo does not dispute, nor can it, that the harness storage cavity has belts "projecting out of said harness storage cavity."  Tr. at 376:10-14, 668:1-7.  Evenflo's only arguments regarding the elements in claim 6[b] are those presented against claim 1 regarding the "purpose" of the cavity and the smooth cover.  As set forth above, these claim elements exist in the accused EveryStage seats, and Defendant infringes claim 6.

### 3.  Claim 8

Claim 8 of the '294 patent is a dependent claim that addresses a specific type of harness belt and a harness storage cavity that can fit chest clips.  Claim 8 is dependent on claim 7, which in turn is dependent on claim 6.  Claim 7 of the '294 patent recites the following elements:

> The car seat of claim 6, wherein each said shoulder strap and a corresponding belt strap are formed from a single piece of webbing having one of said latch members mounted  thereon, each said piece of webbing forming a shoulder strap and corresponding belt strap further including a chest clip mounted on said shoulder strap for engagement with the chest clip on the opposing said shoulder strap to secure said shoulder straps together.

The evidence demonstrates that the accused EveryStage seats meet claim 7.  Tr. at 377:12-380:1; *see also* JTX-351 at 54, 58, 59.  Claim 8 then depends on claim 7, and recites "[t]he car seat of claim 7, wherein said harness storage cavity is sized to receive said chest clips within said harness storage cavity with said latch members."  Again, the evidence shows that this claim element exists in the accused EveryStage seats.  Tr. at 377:12-380:1; *see also* JTX-351 at 52.  Evenflo and its expert do not contest that the elements recited in claim 8 (including dependent claim 7) exist on the accused seats.  Tr. at 668:1-7.  Therefore, the accused EveryStage seats infringe claim 8 of the '294 patent.

### 4. Claim 10

Claim 10 of the '294 patent also depends on claim 6, adding the additional element of "wherein said harness storage cavity being formed with slots to permit the passage of said shoulder straps and said belt straps from said harness storage cavity."  As noted above, Wonderland has demonstrated that the accused EveryStage seats contain the recited cavity "formed with slots."  *See* § II.C.1, *supra*; Tr. at 380:2-15; *see also* JTX-351 at 46.  Evenflo's only argument is, again, that the cavity has no "slots" because any "gaps" exist due to "manufacturing tolerances."  Tr. at 672:5-24.  Evenflo and its expert do not contest that the "slots" exist, but merely argue that the reason for their existence serves some allegedly non-infringing purpose.  This contradicts the claim language and is not sufficient to defeat the evidence demonstrating infringement of claim 10 by the accused EveryStage seats.

### 5. Claim 12

Claim 12 of the '294 patent is another independent claim that addresses a car seat with a harness storage cavity.  It recites the following elements:

| '294 cl. 12 | Claim Language |
|---|---|
| [preamble] | A child car seat for transporting a child in an automobile having a vehicle belt comprising: |
| [a] | a seat member and a back rest connected to said seat member; |
| [b] | a harness including a pair of laterally spaced shoulder straps supported from said back rest and a crotch strap supported on said seat member, a pair of latch members mounted on said shoulder straps, respectively, and a harness buckle connected to said crotch strap; and |
| [c] | a harness storage cavity formed as a recess in said child car seat and including a cover forming a smooth support over said harness storage cavity, said harness storage cavity being sized to receive at least one of said harness buckle and said latch members below said cover, <u>said child car seat being convertible between a car seat configuration in which said latch members are connectable to said harness buckle for securing said child on said child car seat, and a belt positioning booster configuration in which at least said latch members or said harness buckle are stored within said harness storage cavity</u> with said shoulder straps and said belt straps projecting out of said harness storage cavity through slots formed in said harness storage cavity when said cover is closed and said harness buckle and said |

| '294 cl. 12 | Claim Language |
|---|---|
|  | latch members are positioned within said harness storage cavity so that said child can be secured to the child seat via the vehicle belt. |

There is no dispute that the accused EveryStage seats satisfy claim elements 12[a] and 12[b] and those portions of claim 12[c] common to claims 1 and 6 discussed above.  Tr. at 380:16-381:6; 359:8-24, 360:2-14.  Evenflo does not contest these elements.  Tr. at 668:1-7.  Claim 12 recites the additional element of the car seat being convertible and to "a belt positioning booster configuration" in which the latch members or harness buckle are stored in the harness storage cavity . . . ."  The evidence demonstrates that the accused EveryStage seats are convertible from the "car seat configuration" to the claimed "belt positioning booster configuration."  Tr. at 380:16-383:24, 380:2-15; JTX-2 at EVE-000341.  Evenflo does not contest this additional element in claim 12, again only disputing the common elements between claim 1 and claim 12 with which it disagreed.  Tr. at 668:1-7.  Because Defendant's arguments on those common elements between claims 1 and 12 are incorrect, Evenflo infringes claim 12.

### 6.  Claim 13

Claim 13 of the '294 patent is a method claim with steps for storing a harness in a car seat.  It is directed at the users of the accused EveryStage seats and recites the following:

| '294 cl. 13 | Claim Language |
|---|---|
| [preamble] | A method of converting a car seat from a car seat configuration into a belt positioning booster configuration, said car seat having a first portion of a rigid shell and a seat pad mounted on the first portion of said rigid shell, a back rest having a second portion of said rigid shell on which a back panel pad and a head rest pad are supported, each of said back panel pad and said head rest pad being selectively removable from said rigid shell; and a harness including a pair of laterally spaced shoulder straps connected to said rigid shell, a pair of laterally spaced belt straps connected to said rigid shell, and a crotch strap supported from said rigid shell, said harness including a pair of latch members, each said latch member being connected to one of said shoulder straps and a corresponding said belt strap, both said latch members being engagable with a harness buckle connected to said crotch strap, comprising the steps of: |

| '294 cl. 13 | Claim Language |
|---|---|
| [a] | storing said harness buckle and said latch members in a harness storage cavity formed as a recess in said rigid shell, including the steps of: |
| [b] | opening a cover to provide access to said harness storage cavity; |
| [c] | placing said latch members and said harness buckle into said harness storage cavity; and |
| [d] | closing said cover over said harness storage cavity to conceal said harness buckle and latch members behind said cover; and |
| [e] | locating all of said straps projecting from slots formed in said harness storage cavity between said pads and said rigid shell to conceal said harness behind said pads. |

Evenflo and its customers perform all steps of method claim 13 when they follow Evenflo's instructions for converting the accused EveryStage seats to booster mode and storing the harness. Tr. at 384:20-385:6.  Evenflo and its expert do not dispute the fact that Evenflo instructs customers this way, or direct infringement of claim 13, other than their arguments above for other claims of the '294 patent.  *See* Tr. at 668:1-7.

For the preamble to claim 13, the accused EveryStage seats satisfy all the recited car seat elements ("said car seat having . . .").  Mr. Myers explained that the accused EveryStage seats have each of the car seat features in the preamble for the same reasons that the accused EveryStage seats satisfy the elements of apparatus claims 1, 6, 8, 10, and 12.  Tr. at 383:25-384:12.  As noted above, Evenflo and its expert do not contest that the accused EveryStage seats meet any requirements of the preamble, including conversion to a belt positioning booster system.

Claimed method step 13[a], "storing said harness buckle and said latch members in a harness storage cavity formed as a recess in said rigid shell," is performed when customers follow Evenflo's instructions.  Tr. at 384:13-385:22.  As noted above, it is undisputed that Evenflo's manuals instruct users to store the EveryStage harness in a harness storage cavity.  Tr. at 384:20-385:22, 214:7-24; JTX-2 at EVE-000341.  Step 13[a] includes the steps of "opening a

cover to provide access to said harness storage cavity" (element 13[b]), "placing said latch members and said harness buckle into said harness storage cavity" (element 13[c]) and "closing said cover over said harness storage cavity to conceal said harness buckle and latch members behind said cover" (element 13[d]).  All of these steps are also performed.  Tr. at 385:23-386:20; *see also* JTX-351 at 62-63.  Claimed method step 13[e], "locating all of said straps projecting from slots formed in said harness storage cavity between said pads and said rigid shell to conceal said harness behind said pads," is also performed when customers follow Evenflo's instructions.  Tr. at 386:21-387:9; *see also* JTX-351 at 54.  Accordingly, there is no factual dispute about infringement of method claim 13.

Moreover, there is no dispute that Evenflo induces its customers to infringe claim 13.  Inducement requires proof of knowledge of the infringed patents and proof the defendant knew the induced acts were infringing.  *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016).  Evenflo had knowledge of the infringed patents.  Tr. at 217:20-219:20.  Evenflo has stipulated, and the evidence has also shown, that Evenflo provides its customers with instructions and assistance on how to use and install the car seats, thus demonstrating induced infringement.  *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008) (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).  This is most clearly shown by the Evenflo user manuals in evidence.  *See* JTX-1 at EVE-000262 and JTX-2 at EVE-000341.



Indeed, items such as advertisements, user manuals, and other type of documents directed to a class of users such as customers or end users provides the "encouragement" for induced infringement. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016); *see also Arthrocare Corp. v. Smith & Nephew, Inc.,* 406 F.3d 1365, 1377 (Fed. Cir. 2005) (affirming jury's inducement verdict where the defendant distributed "sales literature" and "manuals" that instructed how to use product in infringing manner); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274-75 (Fed. Cir. 2004).

Finally, it is clear that Evenflo's active inducement by encouraging acts actually caused the infringement of claim 13 of the '294 patent. *Dynacore,* 363 F.3d at 1274 ("[T]o prevail under a theory of indirect infringement, [plaintiff] must [] prove that the defendants' actions led to direct infringement of the [patent-in-suit]."). The evidence provided by the user manuals (and the testimony of Mr. Myers) demonstrates that Evenflo's actions led to customer infringement. *See Power Integrations*, 843 F.3d at 1333-35; *see also C R Bard Inc. v. Angiodynamics, Inc.*, 979

F.3d 1372, 1378 (Fed. Cir. 2020) (evidence of manuals directed to doctors showing how to use the device in infringing manner).

### 7. Claim 15

Claim 15 recites the steps of "disconnecting said crotch strap from said first portion of said rigid shell," and "positioning said crotch strap within said harness storage cavity with said harness buckle." Claim 15 depends from claim 14, which in turn depends from claim 13. There is also no dispute that Evenflo and its customers perform all steps of claim 15 when they follow the accused EveryStage seats' manuals' instructions for storing a harness. When customers follow Evenflo's instructions and store the harness in the accused EveryStage seats, they perform the additional steps of "repositioning said shoulder straps and said belt straps behind said head rest pad and said back panel pad to be located against said rigid shell" (claim 14), and then "disconnecting said crotch strap from said first portion of said rigid shell" (claim 15), and "positioning said crotch strap within said harness storage cavity with said harness buckle" (claim 15). Tr. at 387:10-389:12; *see also* JTX-351 at 64, 66. Evenflo's manuals specifically instruct users to remove and store the crotch strap:



| JTX-351 at 66 | JTX-2 at EVE-000341 | JTX-2 at EVE-000341 |

Evenflo and its expert do not contest any of these elements beyond that disputed for claim 13. Tr. at 668:1-7. Accordingly, there is no factual dispute about infringement of method claim 15.

### D. The EveryStage Seats Meet Every Element of the '725 Patent, Claim 1

As detailed above, the '725 patent is directed to a head rest and harness adjustment

system, where the user can easily raise and lower the headrest and harness without rethreading or other inconveniences.  This promotes convenience for parents and safety for children.  Claim 1 of the '725 patent recites the following:

| '725 cl. 1 | Claim Language |
|---|---|
| [preamble] | A car seat for transporting a child in an automobile, comprising: |
| [a] | a seat member including a seat back having a front surface and a rear surface, said seatback including a control rack formed with a plurality of generally vertically spaced engagement portions located on said rear surface to define a plurality of selected vertical positions; |
| [b] | a head rest movably mounted on said seat back for vertical movement relative thereto; |
| [c] | a locking mechanism mounted on said head rest for vertical movement therewith to engage said control rack to secure said head rest into one of the plurality of selected vertical positions, said locking mechanism including a lock bar that can be moved into engagement with a selected one of said engagement portions to fix said head rest in the corresponding selected vertical position; and |
| [d] | harness belts extending vertically under said head rest from a position at an upper portion of said seat back and passing through at least one opening in said seat back below said head rest for positioning in front of said seat back, said harness belts being connected to said lock bar so that said harness belts will move vertically in response to a corresponding vertical movement of said head rest. |

The evidence shows that the accused EveryStage seats meet all the elements of the '725 patent claim 1.  In particular, and as set forth in more detail below, Mr. Myers explained in detail how each claim element appears in the accused EveryStage seats.  Tr. at 390:4-410:13.

Claim element 1[a].  The accused EveryStage seats satisfy claim element 1[a].  Tr. at 390:14-393:23.  For this element, Evenflo disputes only whether the "control rack" is "located on said rear surface," arguing that "[t]he control rack is trapped between the internal chassis and the back of the seat back."  Tr. at 665:18-21; see also JTX-351 at 15-18.  This argument is incorrect and misconstrues the physical configuration of the accused EveryStage seats.  There is nothing in accused EveryStage seats that indicates the control seat is anywhere but on the rear surface of the seat back, and no support for the contention that it is located "in front" of the seat back trapped

by some "internal chassis."  Mr. Myers explained that a rear surface on the car seats is "the backside or the area behind the occupants," where the child sits.  Tr. at 390:14-391:10 ("So the rear surface is if you look at that wall of plastic and go back behind that and look at all the componentry and all the things going on behind that wall, that's the rear surface.").  He further confirmed this on cross-examination, explaining that the rear surface is behind where the child sits.  Tr. at 472:4-21.  The claims require only "a rear surface" that includes a control rack. There is no dispute that the accused EveryStage seats must have at least one rear surface behind the front surface.  The accused EveryStage seats and Evenflo's CAD drawings demonstrates that the accused EveryStage seats' control rack is located on "a rear surface" as claimed (JTX-351 at 16-17):




Thus, the accused EveryStage seats meet this element.

**Claim elements 1[b-c].**  The accused EveryStage seats also satisfy claim element 1[b], "a head rest movably mounted on said seat back for vertical movement relative thereto."  Tr. at 393:24-394:11; *see also* JTX-351 at 2.  Evenflo and its expert do not contest this element.  Tr. at 662:25-667:20.  The accused EveryStage seats further satisfy claim element 1[c], "a locking mechanism mounted on said head rest . . . ."  Tr. at 394:12-395:12; *see also* JTX-351 at 20.

Again, Evenflo and its expert do not contest this element.  Tr. at 662:25-667:20.

**Claim element 1[d].**  The accused EveryStage seats satisfy claim element 1[d], the harness belt path.  Tr. at 395:13-399:21; *see also* JTX-351 at 21-22.  For this element, Evenflo disputes only whether the harness belts are "connected" to said lock bar.  Tr. at 666:8-667:20. The Court construed "connected" to mean "in a state of contact between elements sufficient to cause one element to affect the position or operation of the other element."  Mem. Op. at 5-6 (Jan. 5, 2021), D.I. 72.

Mr. Myers demonstrated that the accused EveryStage seats harness belts contact the lock bar, and the lock bar therefore affects the position of the belts.  Tr. at 397:14-400:7 ("And you can see it's a very specific contact because the belt does, in fact, change direction as it wraps around the lock bar which is proof positive that it is affecting its direction. It's affecting its position. And then heads out toward the front of the seat."); *see also* JTX 351 at 22:



Evenflo's argument of no "connection"  dispute is misplaced, because Evenflo's expert admitted that contact exists at least when the accused EveryStage seats have the head rest in the "lower positions."  Tr. at 666:21-667:3.  To avoid infringement, Evenflo's expert characterizes the contact as "incidental."  *Id.*  But the claims (and the Court's construction) do not refer to, or

exclude, "incidental contact" from the scope of this element.  Moreover, there is no dispute that the contact exists because the belt wraps around the fixed bar, and that contact affects the harness belts.  Thus, the accused EveryStage seats meet this element, and thus infringe the '725 patent.[5]

**E.    The EveryStage Seats Meet Every Element of the '117 Patent, Claim 9**

As noted above, the '117 patent is also directed to a head rest and harness adjustment system that promotes convenience and safety.  Claim 9 of the '117 patent recites the following:

| '117 cl. 9 | Claim Language |
|---|---|
| [preamble] | A car seat for transporting a child in an automobile and having a seat back on which a head rest is mounted for generally vertical movement relative to said seat back said seat back including harness belts positionable for support of the child within said car seat, comprising: |
| [a] | said seat back being formed with a pair of laterally spaced openings therethrough; |
| [b] | said head rest including a movable guide bar positioned in register with said openings and being vertically movable along said openings in response to a corresponding vertical movement of said head rest relative to said seat back, said movable guide bar member being operable to direct said harness belt through the openings in said seat back; |
| [c] | a fixed guide bar mounted in said seat back above said openings; and |
| [d] | said harness belts extending from an anchor point and being wrapped over said fixed guide bar and extending therefrom to said movable guide bar to be directed through said openings and extend forwardly of said seat back for engagement with the child in said car seat, such that the vertical movement of said movable guide bar redirects the positioning of the corresponding said harness belts. |

The trial evidence shows that the accused EveryStage seats meet all of the elements of '117 patent claim 9.  Mr. Myers explained in detail how each claim element appears in the accused EveryStage seats.  Tr. at 410:14-428:24.

**Preamble and Claim element 9[a].**  The accused EveryStage seats satisfy the preamble of claim 9, to the extent it is limiting.  Tr. at 410:22-411:24.  Evenflo and its expert do not contest this conclusion.  Tr. at 657:20-662:24.  The accused EveryStage seats also satisfy claim

---

[5] Evenflo's testimony regarding alleged non-infringement when the head rest is in the "upper positions" does not change the fact that liability exists when the head rest is in the "lower positions."  *See* section **Error! Reference source not found.**, *infra*.

element 9[a], "said seat back being formed with a pair of laterally spaced openings therethrough."  Tr. at 411:8-24.  As Mr. Myers explained, the accused EveryStage seats plainly have two openings in the seat back (JTX-351 at 4):



Evenflo's arguments on the claimed "openings are misplaced, as Evenflo appears to have identified the location narrowly in relation to the fixed guide bar.  Tr. at 658:2-659:10 ("[T]here are slots there that are shoulder belt slots that guide the slots.  Those are the openings that I would understand based on the patent.").  The presence of *other* openings does not change the fact that the openings that Mr. Myers identified in JTX-351 and the actual car seats correspond to the claimed feature.

**Claim element 9[b].**  The accused EveryStage seats also satisfy claim element 9[b] related to the movable guide bar.  Tr. at 412:17-418:18 ("And basically what that means is because it's a belt, because it's under tension, because that tension really pulls the belt, it doesn't push the belt, that movable guide bar is directing that belt through the opening."); *see also* JTX-351 at 5-6.  Evenflo and its expert dispute only whether the accused EveryStage seats have "said movable guide bar member being operable to direct said harness belt through the openings in said seat back."  Tr. at 661:17-662:24.  Evenflo contends incorrectly that only the "belt guides

that go through the seats back" determines the position of the shoulder belts, not the movable bar. Tr. at 662:12-19. This argument ignores the fact that the movable guide bar plainly contacts the harness belt, and therefore directs its positioning within the car seat as shown in JTX-351 at 6:



Moreover, the Court construed "direct" to mean "to control the position of." Mem. Op. at 5 (Jan. 5, 2021), D.I. 72. The clear contact of the harness belts to the movable guide bar creates tension, which thereby directs the positioning of the belt. Evenflo has not, and cannot rebut how this operation occurs, and offers no explanation as to why the guide in the seat backs supersede or otherwise control the operation of the movable bar in conjunction with the harness belts.

**Claim element 9[c].** The accused EveryStage seats further satisfy claim element 9[c], "a fixed guide bar mounted in said seat back above said openings." Tr. at 412:24-416:14. For this element, Evenflo and its expert dispute only whether the fixed guide bar is mounted "above said openings." Tr. at 659:11-661:16. Here, Evenflo's expert claims that the fixed guide bar is "in the middle" or "roughly at the same level" as the openings. Tr. at 660:11-24. That assessment is

incorrect—Mr. Myers showed how, in Evenflo's CAD drawings, the fixed guide bar in the accused EveryStage seats' back is above the openings that he identified. Tr. at 413:5-414:17. This is clearly shown below in JTX-351 at 4-8, where the fixed guide bar is above the previously identified openings:



**Claim element 9[d].** The accused EveryStage seats finally satisfy claim element 9[d], "said harness belts extending from an anchor point . . . ." Tr. at 416:18-419:6. Evenflo's CAD diagrams show that the accused EveryStage seats' harness belts extend from an anchor point, wrap over the fixed guide bar, extend to the movable guide bar, and are directed through the claimed openings (JTX-351 at 11):



Thus, the belts are arranged "such that the vertical movement of said movable guide bar redirects the positioning" of the belts. Tr. at 418:9-24 (Myers: "we also have the vertical movement of the guide bar and the headrest and its ability to redirect that path during that movement"). Evenflo and its expert did not directly contest this element, or present any evidence that the claimed belts must follow a specific order. Tr. at 657:20-662:24; *see also Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one.").[6] Accordingly, the accused EveryStage seats satisfy element 9[d], and all elements of claim 9.

## III.    EVENFLO INFRINGES LITERALLY AND UNDER THE DOCTRINE OF EQUIVALENTS, REGARDLESS OF THE ACCUSED EVERYSTAGE SEATS' CONFIGURATION

Wonderland has demonstrated the literal infringement and induced infringement of the Asserted Claims of the '294, '725, and '117 patents. The trial evidence showed that infringement occurs even though the accused EveryStage seats may, in certain configurations, not meet all claim limitations. Additionally, the record demonstrates that Evenflo infringes

---

[6] In fact, Defendant's counsel asked on cross-examination if the EveryStage would infringe this element under the doctrine of equivalents, and Mr. Myers confirmed that it would. Tr. at 463:4-466:18 ("It would certainly meet it under doctrine of equivalents if they determined that that must happen in that order.").

certain claim elements both literally and under the doctrine of equivalents.

A.     **The Accused EveryStage Seats Infringe Despite Non-Infringing Modes of Operation**

As indicated by Mr. Myers, in certain operating conditions of the accused EveryStage seats, claim 1 of the '725 patent and claim 9 of the '117 patent may not be infringed. In particular, when the head rest (and thus the harness adjustment) is in a "top-most" position, the accused EveryStage seats may not meet the limitation of claim element 1[d] of the '725 patent that the harness belts are "connected to said lock bar so that said harness belts will move vertically in response to a corresponding vertical movement of said head rest . . . ." Clearly, as Mr. Myers testified and demonstrated through exhibits, this claim element is met at least in certain configurations of the car seat: when the head rest / harness assembly is in a lower position such that the harness belts *are* connected to the lock bar so that they move vertically. Tr. at 427:25-428:18.

In addition, with respect to claim 9 of the '117 patent, element 9[d] in those same circumstances (with the head rest in its upper position) may not meet the requirement that the "vertical movement of said movable guide bar redirects the positioning of the corresponding said harness belts . . . ." Tr. at 401:13-402:11. These circumstances occur during the normal operation of the accused EveryStage seats, without any further modifications to the seat. Tr. at 402:12-20, 428:19-24.

These configurations do not preclude infringement. "Infringement is not avoided merely because a non-infringing mode of operation is possible." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1363 (Fed. Cir. 2018) (citation omitted) (affirming jury verdict of infringement of product claims; "To take a simple example, a patent that claims an automobile configured to operate in third gear would be infringed by an automobile that is configured to

operate in first, second, and third gears.  The automobile is at all times configured to operate in any one of its possible gears, including the infringing one, even if the automobile is never driven in the infringing gear."); *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001).  For example, in *Intel Corp. v. United States ITC*, the patent covered an erasable programmable memory apparatus.  946 F.2d 821, 832 (Fed. Cir. 1991).  One of the claim limitations was a "programmable selection means" for choosing between two modes of operation.  *Id*. at 831.  The Federal Circuit determined that infringement existed even though the devices were marketed and sold to operate *only* in the non-infringing mode of operation due to the fact that it could be used in an infringing matter.  *Id*. at 832.  This Court reached the same conclusion:  an accused device can infringe a claim if it is reasonably capable of satisfying the claim limitations, even if the device is also capable of non-infringing modes of operation.  *M2M Solutions LLC v. Motorola Solutions, Inc.*, No. 12-33-RGA, 2016 U.S. Dist. LEXIS 872 (D. Del. Jan. 6, 2016) at *11-12.

As Wonderland showed by its evidence, the accused EveryStage seats operate, and are thus capable of operating, in an infringing manner.  Tr. at 401:13-402:11, 427:25-428:18.  No modifications of the accused EveryStage seats are necessary to operate in this manner.  Tr. at 402:12-20, 428:19-24.  The fact that the car seats may sometimes operate in certain configurations so as not to infringe claim 1 of the '725 patent and claim 9 of the '117 patent does not preclude infringement.  Evenflo has not contended otherwise, either factually or legally.

> ### B.    Alternatively, Evenflo Infringes Under the Doctrine of Equivalents

Should the Court determine that certain claim elements are not literally met by the accused EveryStage seats, infringement under the doctrine of equivalents exists.  "[E]quivalents remain a firmly entrenched part of the settled rights protected by the patent."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).  The Federal Circuit "applies

two articulations of the test for equivalence": "Under the insubstantial differences test, an element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.  Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it performs substantially the same function in substantially the same way to obtain substantially the same result."  *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (quotations and citations omitted); *see also Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1366 (Fed. Cir. 2020) (noting both tests for equivalents); *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1357 (Fed. Cir. 2012) (applying "insubstantial difference" test) (emphasis omitted).

Specifically, if not literally infringed, the evidence shows infringement of the following claim elements under both the "function, way, result" test or the "insubstantial differences" test:

- A "cover forming a smooth support over said harness storage cavity" as recited in the '294 patent claims;

- "slots to permit said shoulder straps and said belt straps to project from said harness storage cavity" as recited in the '294 patent claims; and

-  "fixed guide bar mounted in said seat back above said openings" as recited in claim 9 of the '117 patent.

 The evidence presented at trial demonstrates that the relevant claim elements are present in the accused EveryStage seats under the doctrine of equivalents.  Moreover, Evenflo's argument that Wonderland surrendered the equivalents to these elements during prosecution is incorrect.  No prosecution history estoppel applies to preclude any infringement under the doctrine of equivalents.

### 1. The '294 Patent

Wonderland alternatively presented evidence of infringement under the doctrine of equivalents for two '294 patent claim elements:  the "cover forming a smooth support over said harness storage cavity," and "slots to permit said shoulder straps and said belt straps to project from said harness storage cavity."  Tr. at 419:9-424:10.

#### a.      "Smooth Cover"

Mr. Myers testified that the accused EveryStage seats' cover meets the "smooth" requirement under the doctrine of equivalents.  The purpose of the "smooth" cover is so "a child can be seated for comfortable transportation."  JTX-428 ('294 patent) at 5:47-49.  When switching to booster mode, the five-point harness (the straps and buckles) are placed in the harness storage cavity.  A cover is included over the harness storage cavity that forms a smooth support to prevent the harness hardware from creating an uncomfortable seating surface for the child.  *Id.* at 5:37-53.

The cover of the accused EveryStage seats' harness storage cavity performs substantially the same function as the claimed "cover forming a smooth support":  to provide a surface that is comfortable for a child.  Tr. at 419:20-24.  The accused EveryStage seats' harness storage cavity performs this function in substantially the same way as claimed in the '294 patent: it is a cover that is smooth to the touch, does not have any sharp edge, and protects the child from the cavity and the harness.  Tr. at 419:25-420:10.  The accused EveryStage seats' "cover" also obtains the same result as the claimed "cover" in that protection and access occurs by having a cover that can be open and closed to store the harness without disengaging it from the seat.  Tr. at 420:19-421:4.  The fact that the accused EveryStage seats' harness storage cavity has an "H" shaped indentation has no bearing on the function of the cover, the way that function is achieved, or the result.  There is no evidence that this indentation affects the child's comfort, or otherwise would

prevent the harness from being properly stored while in booster mode. Evenflo advises its customers to use the storage cavity to store the harness in the cavity, close the cover, and then use the seat in booster mode: *i.e.*, with a child in the seat. JTX-2 at EVE-000341. The storage cover in the accused EveryStage seats' device protects the child from having to sit on or against the harness' latches and buckles.

Moreover, the harness storage cover of the accused EveryStage seats is not substantially different than the patented cover element; the addition of the "H" indentation is but a small part of the cover, does not interfere with the operation of the cover, and does not create any projections that would result in discomfort for the child.[7] Thus, infringement exists for this element under the doctrine of equivalents.

> **b.    Slots to Permit Straps to Project From Harness Storage Cavity**

Likewise, Evenflo infringes the '294 patent element of a cover formed with "slots to permit said shoulder straps and said belt straps to project from said harness storage cavity when said cover is closed . . ." under the doctrine of equivalents. The accused EveryStage seats operate such that the harness buckle and latch members are stored in the cavity without disconnecting the harness from the seat. The straps project out of the harness storage cavity via the slots as shown in JTX-351 at 46 (pictured below).

---

[7] Note that the indentations on the accused harness storage cavity cover are depressions; *i.e.*, are "channels" formed inward to the cavity, not outward. *See* PTX-516 at WL-0128704.

Mr. Myers testified that the configuration of the straps projecting out of the harness storage cavity on the accused seats infringe the "slots" element under the doctrine of equivalents. Tr. at 421:16-424:10. The purpose of the "slots" is recited in the '294 patent claims: to permit the straps to project from the harness storage cavity when the cover is closed and the latch members are stored within the cavity. The '294 patent specification teaches that the purpose of the storage cavity being formed with "slots" is "for passage of the harness webbing [*i.e.*, the straps] . . . which will remain connected to the harness buckle [], latch members [], and chest clips . . . ." JTX-428 ('294 patent) at 4:58-63. The "slots" are "sized to receive and allow passage of the shoulder straps [] and belt straps [], respectively, from the harness storage cavity []." *Id.* at 5:33-37; *see also id.* at 5:41-54.

The "slots" of the accused EveryStage seats' harness storage cavity perform substantially the same function as the claimed "slots to permit said shoulder straps and said belt straps to project from said harness storage cavity": openings for straps to allow them to project out of the harness storage cavity such that the five point harness does not need to be disconnected when in booster mode. Tr. at 421:16-24, 422:7-12, 423:16-424:10. The accused EveryStage seats' harness storage cavity performs this function in substantially the same way as

claimed in the '294 patent, as the accused EveryStage seats have access for the straps to exit the harness storage cavity when the cover is closed. Tr. at 421:25-422:19. The accused EveryStage seats' "slots" also obtain the same result as the claimed "slots" in that "the harness can be safely stored without ever disengaging it from its anchor points and by allowing the straps to project out from the cavity to their original anchor points." Tr. at 422:20-423:1.

Moreover, the "slots" formed in the harness storage cavity of the accused EveryStage seats are not substantially different than the patented slots element. The fact that a specific configuration of the slots in the accused EveryStage seats do not change the fact that they exist for the sole purpose to meet the claim: to allow the harness straps to project out of the cavity without disengaging the straps from the seat. Tr. at 423:4-22. Thus, infringement exists for this element under the doctrine of equivalents.

### c. The Equivalents Were Not Surrendered By The Prosecution of the '294 Patent

The equivalent harness storage cavity in the accused EveryStage seats to the claimed "cover forming a smooth support over said harness storage cavity" was not surrendered by prosecution history estoppel. Claim 1 as originally written included this element. JTX-427 at WL-00000388. During prosecution, this claim was amended to add the limitation that the harness storage cavity was "sized to receive" the latch and buckle members, *id*. at WL-00000472, and the originally claimed "at least one harness storage cavity" was amended to only claim "a harness storage cavity," *id.* at WL-00000507. Thus, the reason for the narrowing amendments had nothing to do with the equivalent of a "smooth cover" in the accused EveryStage seats' device, and thus fits squarely within the "tangential relation" exception to overcome the presumptive surrender of the equivalent. *See Bio-Rad Labs*, 967 F.3d at 1364; *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019) (citation omitted).

Specifically, the amendment added a different limitation than the claimed equivalent ("sized to receive") to overcome a rejection based on the *size* of the cavities due to two prior art references, the Meeker and Gunji patents. JTX-427 at WL-00000480-81. The claims were also later amended to make clear that only one harness storage cavity was being claimed. These amendments have nothing to do with the "smooth cover," and the claimed equivalent is thus tangential to the reason for the amendment.

Evenflo questioned Wonderland's expert regarding a similar amendment to original claim 13 that added language relating to the smooth cover over the harness storage cavity. Tr. at 500:7-501:3. However, as stated above, the basis for the amendment to claim 13 was done for the same reasons as claim 1, which already contained the smooth cover language: to add the "sized to receive" limitation to overcome the prior art references related to a different physical structure (the size) of the cavities. JTX-427 at WL-00000480-81. The "smooth cover" limitation would not have overcome the prior art, because the Examiner noted its presence in the Gunji patent. *Id.* at WL-00000453. The fact that the "smooth cover" limitation already provided for claim 1 was added to claim 13 does not preclude application of the doctrine of equivalents given that the purpose of the Amendment was related to the "size" structure of the prior art cavity.

Finally, the independent claims were also amended to add the limitation related to "slots to permit said shoulder straps and said belt straps to project from said harness storage cavity." JTX-427 at WL-00000507-510. This limitation was already present in an originally filed dependent claim (claim 3), a fact noted by Wonderland in its Amendment. *Id.* Notwithstanding that the limitation already existed in the '294 patent claims, the reason for the amendment to include the "slots" limitation again related to the size of the storage cavity, not for the stated

equivalent.  The Examiner continued its rejection over Meeker and Gunji due to the cavity not being sized to receive a harness buckle, and the claims were amended to overcome that rejection. *Id.* at WL-00000497-498 (discussing Meeker and Gunji in relation to the cavity not being sized to receive a harness buckle).  As explained by Wonderland in the Amendment, the "slots" limitation was not the subject of the rejection based on the prior art.  *Id.*  Because the reason for the narrowing amendments pertaining to size had nothing to do with the equivalent of a "slots to permit" the straps to project "from" the cover, the amendment was tangential to the equivalent. *Bio-Rad Labs*, 967 F.3d at 1364; *Eli Lilly,* 933 F.3d at 1331.  *See also Insituform Techs., Inc. v. Cat Contr., Inc.*, 385 F.3d 1360, 1369-70 (Fed. Cir. 2004); *Funai Elec. Co., Ltd. V. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1369 (Fed. Cir. 2010).

### 2.  The '117 Patent

Wonderland also presented evidence of infringement under the doctrine of equivalents for the "fixed guide bar mounted in said seat back cover" element of claim 9 of the '117 patent. Tr. at 413:25-415:8.  Specifically, Mr. Myers testified how the fixed guide bar and its relationship to the seat back openings in the accused EveryStage seats meets the '117 claim 9 requirement for a "fixed guide bar mounted above said openings."  The function of the claimed fixed guide bar and its position is to "help position the belt and allow an upper point for the belt to wrap over."  Tr. at 414:4-8.  The fixed guide bar structure and its position in the accused EveryStage seats has the same relationship as those in the claims, and thus serves the same function.  Tr. at 414:9-14.  The accused EveryStage seats' fixed guide bar performs this function in substantially the same way as claimed in the '117 patent because its position, as well as "its relationship to the belt and opening," are essentially the same as the claimed fixed guide bar.  Tr. at 414:9-14.  The accused EveryStage seats' "fixed guide bar" also obtains the same result as the claimed "fixed guide bar" in that the result is holding the harness belt in an "upward position,"

which in turn allows the belt to pass down to the lock bar to perform the function of positioning the belts.  Tr. at 414:15-24.

Moreover, the fixed guide bar and its position in the accused EveryStage seats are not substantially different than the patented fixed guide bar; as Mr. Myers testified, it is in the same relative position within the car seat, and "it essentially performs the same function and it nets the same result of the claimed feature."  Tr. at 416:6. Thus, infringement exists for this element under the doctrine of equivalents.

## IV.    WONDERLAND IS ENTITLED TO REASONABLE ROYALTY DAMAGES

Wonderland is also entitled to compensatory damages against Evenflo for the direct and induced infringement of the patents-in-suit.  Wonderland's expert opined that Evenflo's infringing actions are properly compensated by $845,528 in reasonable royalty damages.[8] The parties are in agreement (via testimony from the damages experts, Todd Schoettelkotte [Wonderland], and Melissa Bennis [Evenflo]) that the analytical approach is appropriate to determine a reasonable royalty under the well-established *Georgia-Pacific* factors.  Tr. at 815:21-24; *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). The main dispute between the damages experts revolve around the value that should be credited to the patented features.  Ms. Bennis attempts to measure this value through reliance on incomparable license agreements while Mr. Schoettelkotte uses the analytical approach to calculate the incremental profit directly attributable to the patented features.  Mr. Schoettelkotte's analysis should be adopted because it includes an analysis of all the relevant facts and appropriate case law.

---

[8] Wonderland reserves its rights to seek additional damages through the date of the entry of judgment for sales outside the period considered by the experts.

A.    **Evenflo's Expert Considered Incomparable Licenses To Drive Down The Overall Reasonable Royalty Rate**

Despite the existence of more relevant evidence, Ms. Bennis improperly seeks to rely on two inapplicable licenses: a 1996 agreement between Evenflo and Scotty of California ("Scotty") (a single patent relating to folding strollers), and a 2015 agreement between Evenflo and Seibert Williams Glass, LLC ("Seibert") (technology agreement for embedded chips to alert parents to children left in the car). *See* Tr. at 564:7-18, 564: 24-565:5; 592:13-18.

Wonderland's expert, Mr. Schoettelkotte, testified that the parties would not have considered the Scotty nor the Seibert agreement as comparable "because of the differences in the technology associated with the Scotty of California baby stroller with a folding mechanism and the SensorSafe which was ultimately a chest clip on the straps of a car seat, essentially a bit like a baby monitor." Tr. at 564:24-565:5. Evenflo's expert, Ms. Bennis, relied on these agreements, but failed to secure a technical comparability opinion from Evenflo's technical expert, Mr. Campbell. Tr. at 843:2-844:7.

The goal of a reasonable royalty is to compensate the patent holder for the value of the technology used by the infringer. *Ericsson, Inc. v. D-Link Sys.,* 773 F.3d 1201, 1233 (Fed. Cir. 2014). Under *Georgia-Pacific*, damages are determined by creating a hypothetical royalty negotiation between the patent holder and alleged infringer. *Georgia-Pacific*, 318 F. Supp. at 1120. Comparable licenses entered into by the parties serve as valuable tools to determine the reasonable royalty the parties would have negotiated. Courts will not allow comparison to licenses where there is only "loose or vague comparability between different technologies." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). Stating that the licensed products are in the same field without directly linking the agreements back to the patented technology is improper. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325,

1332 (Fed. Cir. 2009).  The Scotty and Seibert licenses are incomparable and Ms. Bennis did not meet her burden as a matter of law to establish that they are appropriate proxies the parties would have considered to determine a reasonable royalty.

Accordingly, this Court should find that the parties would not have considered the Scotty or Seibert agreements, as the technologies are too dissimilar to the ones at hand and involve significantly different patent licenses.

### B.    Mr. Schoettelkotte's Apportionment Analyses Confirm His Opinions

Wonderland's reasonable royalty analysis includes several apportionment analyses to ensure that **only** the value of the patented features is considered in the reasonable royalty. Wonderland, through Mr. Schoettelkotte's testimony, opines that the incremental profit attributed to the patents-in-suit, as opposed to other non-patented elements, is at least 3.7%.  Tr. at 550:6-11.

In support of his analysis, Mr. Schoettelkotte considered a 2017 Evenflo Product Marketing Brief—a document used by Evenflo to assess the progress and development of the EveryStage product.  Tr. at 549:5-14.  In this document (JTX-230),  Evenflo compared the projected profitability of the EveryStage product to the predecessor Symphony product.  Tr. at 549:15-23.  Evenflo's own document (JTX-230) showed that Evenflo projected 32% profit for the EveryStage LX product, a 3.7% premium above the 28.3% profit generated by the Symphony product.  Tr. at 549:24-550:11.[9]

Mr. Schoettelkotte's analysis then identified that the main differences between the Symphony and EveryStage products included (1) the patented features of the '117 and '725 patents; and (2) the in-seat recline feature (not at issue here).  The in-seat recline feature,

---

[9] Mr. Schoettelkotte also noted that several Graco products practice the asserted patents (Tr. at 593:1-25), which Mr. Myers established (Tr. at 429:5-18), and Evenflo did not dispute.

however, does not work in absence of the headrest harness adjust feature.  Tr. at 554:19-555:4.

Thus, Mr. Schoettelkotte concluded that the 3.7% difference in projected profitability was

directly attributed to the introduction of the patented features.  Tr. at 601:7-15.  Using Evenflo's

anticipated price for the EveryStage LX of $142.59, as shown in JTX-230, Mr. Schoettelkotte

calculated $5.28 in incremental profit, apportioned to the patented features.[10]  *Id.*

Mr. Schoettelkotte also considered another Evenflo profit projection for the EveryStage

LX from April 2018 (a date just a few months removed from the June 2018 hypothetical

negotiation) that showed an expected profitability of 26.7% for the EveryStage LX.  Tr. at

550:24-551:17.  Mr. Schoettelkotte compared this to the actual profitability of the Symphony

(17.6%) over the months January – May 2018 to arrive at a 9.1% incremental profit attributable

to the patented features.  Tr. at 551:18-552:4.  Mr. Schoettelkotte then multiplied the 9.1% by the

$142.59 price of the EveryStage to arrive at an expected profit premium of $12.28.  *Id*.

Therefore, at the hypothetical negotiation, Evenflo would have expected to earn between $5.28

and $12.98 in additional profit due to the patented features.   Taking into account various other

market factors and licensing practices, Mr. Schoettelkotte determined that $8.00 was an

appropriate royalty within this range.  *Id*.

Ms. Bennis attempts to counter Mr. Schoettelkotte's analysis by stating that she reviewed

the *actual* profits of the EveryStage and Symphony, arriving at a figure less than 0%, compared

to Mr. Schoettelkotte's 3.7% and 9.1% findings.  Tr. at 802:2-22.  However, as Mr.

Schoettelkotte made clear, the proper analysis evaluates *expected* profits at the time of a

hypothetical negotiation, and not actual profits that occurred after the hypothetical negotiation.

---

[10] Notably, Mr. Schoettelkotte's use of the EveryStage LX price (the base model EveryStage) ensures that the $5.28 is apportioned for and does not capture the value of additional features unrelated to the patents-in-suit in the more feature-rich DLX and Gold models.

Further, in order to derive her 0% figure, Ms. Bennis compared the Symphony and EveryStage profit from two *dissimilar* time periods. Tr. at 794:24-795:10. As identified by Mr. Schoettelkotte, during the damages period, the EveryStage earned an actual profit of 19.8% and the Symphony earned an actual profit of 16.3%. Tr. at 576:14-23. Notwithstanding the appropriate comparison under the analytical approach is of *expected* profit at the time of the hypothetical, had Ms. Bennis performed a proper comparison of actual profits, she would have calculated the EveryStage earns a profit premium of 3.5% over the Symphony (which is not dissimilar to the 3.7% from Mr. Schoettelkotte's correct application of the analytical approach). Thus, Ms. Bennis' criticisms of Mr. Schoettelkotte's analysis are unreasonable, in part because she ignores the expectations of the parties at the time of the hypothetical negotiation and in part because her own comparison of actual profit does not compare data from similar time periods. Moreover, in prioritizing actual profits over expected, Ms. Bennis does not properly consider that at the time of a hypothetical negotiation in 2018, Evenflo was anticipating the EveryStage to be the hero product of 2018 and outperformed the Symphony. JTX-210; Tr. at 534:7-535:3.

Ms. Bennis also failed to attribute the appropriate amount of profit directly apportioned to the patented technology. Among other factors, the analysis requires determining the amount of profit the infringer received that is directly attributable to the patented technology. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (finding that the patented technology was fundamentally important to the product and thus that a "substantial fraction" of the infringer's profit on the infringing product was attributable to the patented technology). Inherent to this failure is Ms. Bennis' improper analysis under the analytical approach. It is widely accepted that the analytical approach considers *expected* profits of the infringing product at the time of the hypothetical. *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, No. 17-

1734-RGA, 2021 U.S. Dist. LEXIS 49067, at *32 (D. Del. Mar. 16, 2021) (stating that "The Federal Circuit has affirmed use of the analytical approach where the infringer's usual net profit is subtracted from its anticipated net profit realized from sales of infringing products."); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (stating that the analytical method focuses on the "infringer's *projections of profit for the infringing product*") (emphasis added); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986) (describing the analytical approach as subtracting the "infringer's usual or acceptable net profit from its *anticipated* net profit realized from sales of infringing devices.") (emphasis added).  Despite this well-known precedent, Ms. Bennis chose to focus solely on actual profits, which is not proper and lead to an erroneous result.

## V.    MARKING

Pursuant to 35 U.S.C. § 287, a patentee is charged with marking its products protected by the patent.  If the patentee does not mark, recovery of past damages may be limited to the date that the alleged infringer was provided *actual* notice.  35 U.S.C. § 287; *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) ("The statute permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice. The requirement of actual notice is designed to assure that the accused infringer knew of the adverse patent and the alleged infringement during the period in which its liability accrues.").

It is undisputed that Graco did not mark its products with designations for the patents-in-suit.  However, Evenflo, not Wonderland, bore the initial burden to identify particular unmarked products.  *See Arctic Cat Inc. v. Bombardier Recreational Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("We hold an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287."); *IBM v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 688 (D. Del. 2017)

("Instead, the initial burden is on the Defendants to 'come forward with particular unmarked products allegedly triggering § 287.'") (citation omitted).  Evenflo did not meet this burden.

In addition to failing to identify particular unmarked products, Evenflo also failed to raise the marking issue either during the pre-trial submission or the trial.  *See* Def.'s Pretrial Submission on Disputed Issues for Trial (Jan. 21, 2021), D.I. 163 (failing to designate marking as an issue for trial.  The Pretrial Order controls the course of the action for the trial.  *See Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir. 1987) (noting that "[t]he finality of the pretrial order contributes substantially to the orderly and efficient trial of a case").  Legal theories and issues not raised in the pretrial order are considered waived.  *Dean v. Brandywine Studios*, No. 99-679-KAJ, 2003 U.S. Dist. LEXIS 2299, at *4 (D. Del. Feb. 10, 2003) ("Having failed to raise the issue in the pretrial order and having failed to address it at trial, defendants have waived any right they might have had to assert a statute of limitations defense."); *Colli v. Wirth*, 94 Civ. 3234 (LBS), 1996 U.S. Dist. LEXIS 11176, at *3-4 (S.D.N.Y. Aug. 6, 1996) ("It is an established procedural principle that a party's failure to include a legal theory or defense in the pretrial order results in its subsequent abandonment or waiver.").  *Babby v. City of Wilmington Dep't of Police*, 614 F. Supp. 2d 508, 510-511 (D. Del. 2009) (Farnan, J.).[11]  Accordingly, Evenflo has waived its ability to raise the marking issue as a defense.  *See Endo Pharms. Inc. v. Amneal Pharms., LLC*, 224 F. Supp. 3d 368, 387 (D. Del. 2016).[12]

At minimum, Evenflo had actual notice of the patents-in-suit and its infringement no later

---

[11] The cited cases all rely on Fed. R. Civ. P. 16(e).  The pertinent provision is now recited at Rule 16(d), but the waiver still applies.  *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (finding that any claim, defense, or "theory of damages" not included in the Pretrial Order is waived); *see also Scott v. Vantage Corp.*, Nos. 20-1054, 20-1055, 20-1137, 2021 U.S. App. LEXIS 3242, at *18-19 (3d Cir. Feb. 5, 2021); *Heritage Handoff Holdings, LLC v. Fontanella*, No. 1:16-cv-00691-RGA, 2019 U.S. Dist. LEXIS 93112, at *3 (D. Del. June 4, 2019) (Andrews, J.).

[12] Evenflo did raise marking as a defense in its Answer, but that pleading does not control after the submission of the Pretrial Order.

than the filing of the Complaint on December 14, 2018—six months after the release of the EveryStage in June 2018.  *See* Compl. (Dec. 14, 2018), D.I. 1; *see also* Tr. at 219:21-23. Accumulation of past damages would thus begin on the date of actual notice.[13]

## VI.    CONCLUSION

Wonderland has proved by a preponderance of the evidence that Evenflo directly or indirectly infringes all Asserted Claims, and that Wonderland is entitled to damages.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Michael J. Songer
Shamita Etienne-Cummings
David M. Tennant
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005-3807
(202) 626-3600

Bijal Vakil
Henry Y. Huang
WHITE & CASE LLP
3000 El Camino Real
Palo Alto, CA  94306-2109
(650) 213-0300

Dated:  March 22, 2021

---

[13] Should this Court find a marking defense applies, Wonderland reserves the right to recalculate its damages from the time of filing until the present day.